# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-2564

WERNER G. HOOD, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 25, 2009)

*Mark R. Lippman*, for *The Veterans Law Group*, of La Jolla, CA, was on the brief for the appellant.

*Thomas E. Sullivan*, with whom *John H. Thompson*, Acting General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Gayle E. Strommen*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*: The appellant, Werner G. Hood, through counsel, appeals an August 10, 2007, decision of the Board of Veterans' Appeals (Board) denying compensation under 38 U.S.C. § 1151 for additional disabilities as a result of VA medical treatment from April to May 2000, including residuals of a staphylococcus (staph) infection. The parties each filed briefs and the appellant filed a reply brief. The appellant also filed a motion to expedite the appeal pursuant to U.S. VET. APP. R. 47(a). For the reasons that follow, the Court will vacate the Board decision and remand the matter for further adjudication.

## I. FACTS

The appellant served on active duty in the U.S. Army from March 1945 to January 1947. Record (R.) at 2, 12, 38. In March 2000, he underwent coronary artery bypass graft (CABG) surgery at the Charleston, South Carolina, VA Medical Center (VAMC). R. at 66, 402, 723-25, 1026. Three weeks after the surgery, he returned to the VAMC, complaining of fevers and pain and a skin irritation near his surgical wound. R. at 392-93. He thereafter underwent an additional procedure to remove a staph infection. *Id.*

In March 2002, the appellant filed a claim for disabilities that he alleged began as a result of the staph infection. R. at 362. In support of his claim, the appellant submitted a statement of another veteran, Bruce A. Pauly, who had also undergone heart surgery at the Charleston VAMC within days of the appellant's procedure. R. at 367. Mr. Pauly stated that he also developed a staph infection that required surgical treatment and that he thought that "there were four other open-heart patients that came down with this infection." *Id.* Mr. Pauly also stated that he was told by a physician that bacteria had been discovered in the Charleston VAMC intensive care unit (ICU) and that the nurses there were the likely carriers. R. at 367. The appellant's wife testified at a Board hearing that she had learned that there were at least four other veterans who contracted a staph infection in the Charleston VAMC ICU during the same time period. R. at 616.

In October 2002, the Columbia, South Carolina, regional office (RO) denied the appellant's claim for compensation for a staph infection and related conditions. R. at 512-19. The appellant thereafter disagreed and perfected an appeal. R. at 521, 542. In June 2005, the Board remanded the matter for further development, finding that

> any determination by VA that VA nurses in the VAMC Charleston ICU communicated staphylococcus aureus to patients at approximately the period of time in which [the appellant] developed such a post-operative infection would be pertinent to his claim . . . and that VA's duty to assist . . . requires an attempt to find out if in fact there was such a determination[.]

R. at 636. The Board specifically instructed VA's Appeals Management Center (AMC) to contact the Charleston VAMC to determine whether that facility, or any other VA office, had undertaken an investigation into the infections and to request a copy of any related report,

"redacted in accordance with the Privacy Act, if necessary." *Id.* The Board further directed that, if the AMC received information implicating VAMC employees in the transmission of the infection to one or more veterans who were in the ICU during the time period in question, then the AMC should refer the appellant's hospital records to an infectious disease specialist to determine whether the appellant's staph infection was due to VA carelessness or negligence, error in judgment, lack of proper skill, or other incidence of fault by VA nurses, housekeeping staff, or other VA employees. R. at 637.

In October 2005, the AMC requested that the Charleston VAMC forward a copy of any report that was generated after an investigation or inquiry into the infections. R. at 654. The Charleston VAMC informed the AMC that "a focused review was completed," but that "the [q]uality [a]ssurance statutes and regulations . . . do not permit us to release this review." R. at 657. In December 2005, the AMC informed the appellant that the VAMC refused to release the report. R. at 663-64.

In July 2007, in lieu of the report of the VAMC's investigation into the infections, the Board sought an expert medical opinion to determine whether the appellant's condition was caused by VA negligence. R. at 1142-47, 1161-62. The specialist, Lawrence L. Creswell, M.D., opined that:

> Deep sternal wound infection is an uncommon, but foreseeable complication associated with CABG. Given the patient's preoperative demographics and medical history, his risk for developing this complication, in my estimation, was 1% to 4%. From the medical record, there is no evidence of negligence or lack of due care or skill in regard to the medical care he received from the VA.
>
> Evidence confirming that up to four persons receiving treatment at the VAMC Charleston ICU at approximately the same time as the appellant developed similar infections would not necessarily demonstrate negligence or lack of due care. Such an occurrence could simply be a statistically unlikely happening.
>
> It is impossible, in retrospect, to know if a cluster of similar infections were simply a statistically unlikely happening or due to a particular source of infection. Given a cluster of such infections, the VAMC Charleston would be obligated to investigate the possibility that a provider working in the ICU could be a carrier of the particular infection. The occurrence of a cluster of similar infections might also suggest the need for better isolation of patients in the ICU.

3

R. at 1162.

In August 2007, the Board denied the claim, finding that, while the appellant's infection was unquestionably the result of VA medical treatment, it was not proximately due to VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA's treatment providers, and that any residual disabilities were reasonably foreseeable. R. at 2.

## II. ARGUMENTS

The appellant raises two related arguments in his opening brief.[1] His primary argument may be construed as alleging that the Board, in rendering the decision on appeal without the benefit of the VAMC report, failed to comply with its own previous remand order directing the AMC to obtain the report. Appellant's Amended Brief (Appellant's Br.) at 6. He also contends that he is "entitled to an in camera review by this Court of any report or document concerning" the staph infection that he contracted at the Charleston VAMC. *Id.* at 5.

The Secretary argues that the Court should affirm the Board's finding that the appellant is not entitled to benefits under section 1151 because the decision "is plausibly based on the evidence of record and is supported by an adequate statement of reasons or bases." Secretary's Brief (Secretary's Br.) at 7. With regard to the appellant's argument, he contends that the Court does not have the authority to "conduct an in camera review of privileged documents." *Id.* at 10. Even if the Court had such authority, the Secretary argues, the Court does not have jurisdiction to review documents not contained in the record of proceedings before the Board. *Id.* at 10-11.

## III. ANALYSIS

The appellant's claim is one for disabilities that he suffered as the result of VA medical treatment and is, therefore, governed by 38 U.S.C. § 1151. As the appellant filed his claim after 1997, the amended version of section 1151, which requires a claimant to demonstrate fault on

---

[1] The appellant filed his opening brief on July 21, 2008. On October 22, 2008, the appellant moved to amend his brief because his original brief cited to a supplemental record. The appellant's motion to supplement the record, however, was denied by the Court. The appellant thereafter filed his amended brief, which is substantively the same as his original brief, on November 25, 2008.

4

the part of VA, applies in this case. *See Brown v. Gardner*, 513 U.S. 115 (1994) (invalidating VA's prior regulation that read a fault requirement into the pre-1997 version of section 1151); *Boggs v. West*, 11 Vet.App. 334, 343-44 (1998) (noting that the amended version of section 1151 applies only to claims filed on or after October 7, 1997, as explicitly mandated by Congress); Pub. L. No. 104-204, § 422(b)(1), (c), 110 Stat. 2926-27 (1996) (amending section 1151, in response to the decision in *Gardner*, to incorporate a fault requirement and mandating that those amendments were applicable only to claims filed on or after October 1, 1997). Pursuant to the amended version of 38 U.S.C. § 1151, compensation will be awarded for (1) an additional disability that (2) is not the result of the veteran's willful misconduct, (3) was "caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary," and (4) was proximately caused by "*carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault* on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination." 38 U.S.C. § 1151(a)(1)(A) (emphasis added); *see also* 38 C.F.R. § 3.361 (2009).

In this case, the first three of the aforementioned "elements" of a section 1151 claim are undisputed. R. at 2. That is, as the Board explained, the appellant has an additional disability—the staph infection—that is not the result of his own willful misconduct and was caused by VA medical treatment. *Id.* The only remaining question, therefore, is whether the infection was proximately caused by some fault on the part of the Charleston VAMC.

A. Board's Reliance on a Medical Opinion in Lieu of the VAMC Report

It is clear that the Board understood that the gravamen of the appellant's claim is the allegation of VA negligence because, as noted above, it originally remanded the appellant's claim after finding that it could not resolve the question of fault without further information concerning the VAMC's investigation of the infections. R. at 636. The appellant argues that the Board's failure to obtain the VAMC report constitutes noncompliance with its earlier remand order. Appellant's Br. at 6; *see Stegall v. West*, 11 Vet.App. 268, 271 (1998) (holding that "a remand by this Court or the Board imposes upon the Secretary . . . a concomitant duty to ensure compliance with the terms of the remand").

Contrary to the appellant's assertion, the mere fact that the Board did not obtain the VAMC report is not necessarily a violation of *Stegall*. Instead, if the expert opinion that the Board relied upon in this case is sufficient to address the question of VA negligence, then the Board has substantially complied with its own remand order. *See D'Aries v. Peake*, 22 Vet.App. 97, 105 (2008) (substantial compliance, not strict compliance, is required under *Stegall*). A cursory review of Dr. Creswell's opinion, however, reveals that it is, at best, equivocal as to the central question of VA negligence. Indeed, the fact that Dr. Creswell found it "impossible . . . to know if a cluster of similar infections were simply a statistically unlikely happening or due to a particular source of infection," should have signaled to the Board that the medical opinion was speculative and of little probative value. *See Polovick v. Shinseki*, 23 Vet.App. 48, 54 (2009) (holding doctor's statement that veteran's brain tumor "may well be" connected to Agent Orange exposure was speculative); *Bloom v. West*, 12 Vet.App. 185, 187 (1999) (noting that the use of the term "could," without other rationale or supporting data, is speculative); *Goss v. Brown*, 9 Vet.App. 109, 114 (1996) (noting that the use of the phrase "could not rule out" was too speculative to establish medical nexus); *Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992) (holding that medical opinions are speculative and of little or no probative value when a physician makes equivocal findings such as "the veteran's death *may or may not* have been averted"). Accordingly, to the extent that the Board intends to rely on a medical opinion in lieu of the VAMC report for the purposes of determining whether VA was at fault in causing the staph infections, it must obtain a more definitive statement than that offered by Dr. Creswell. *See Stegall*, *supra*.

Moreover, the Secretary's assertion that Dr. Creswell's opinion provides a "plausible basis" for the Board's decision to deny the appellant's claim is flawed. Secretary's Br. at 6. The Court reviews factual findings under the "clearly erroneous" standard such that it will not disturb a Board finding unless, based on the record as a whole, the Court is convinced that the finding is incorrect. *See Padgett v. Nicholson*, 19 Vet.App. 133, 147 (2005) (en banc) (noting that a Board finding "'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (internal citations

6

omitted)). Whether a medical opinion is adequate is a finding of fact that the Court reviews under the "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4); *D'Aries*, 22 Vet.App. at 104.

In this case, the Court is definitely and firmly convinced that the Board erred in finding that the equivocal opinion of Dr. Creswell—the only evidence of record that could be construed as negative—was adequate and was, therefore, a sufficient basis upon which to deny the appellant's claim. *See Padgett* and *D'Aries*, both *supra*. Accordingly, remand is necessary so that the Board can readdress the question of VA negligence. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

### B. Availability of the VAMC Report

Although the Court has concluded that the Board clearly erred in relying on Dr. Creswell's opinion, the question remains whether the Board correctly determined that the VAMC report is privileged and confidential. *See* R. at 3-4. The Court will, therefore, address the appellant's arguments pertaining to the confidentiality of the VAMC report so that, on remand, the Board may properly consider this issue in the first instance. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) (noting that the Court may provide guidance on additional issues to ensure a proper decision on remand).

As noted, the appellant alleges that the Board failed to comply with its own remand order by not obtaining the VAMC report. App. Br. at 6. Specifically, he alleges (1) that the Secretary failed to describe, in advance and in writing, the VAMC report in question as a quality assurance document; and (2) that the Court, therefore, should review the VAMC report, in camera, to determine whether VA may properly withhold it as confidential. App. Br. at 6-8.

#### 1. *Legal Framework Governing Quality Assurance Activities*

Congress has mandated that the Secretary establish a "quality-assurance program" to "monitor and evaluate the quality of health care furnished by" VA. 38 U.S.C. § 7311(a). Among other things, the quality assurance program requires that the Secretary must "periodically evaluate . . . whether there are significant deviations in . . . morbidity rates for surgical

7

procedures performed" by VA as compared to prevailing national standards. § 7311(b)(1)(A). The statute defines a "medical quality-assurance program" as a

> Department systemic health-care review activity designated by the Secretary to be carried out by or for the Department for either [improving the quality of medical care or improving the utilization of health-care facilities].

38 U.S.C. § 5705(c)(2). With some exceptions, records and documents created by VA as part of a quality assurance program "are confidential and privileged and may not be disclosed to any person or entity." § 5705(a). Specifically, the Secretary must disclose quality assurance documents to a federal agency or private organization, "if such record or document is needed by such agency or organization to perform licensing or accreditation functions" for, or to monitor, VA healthcare facilities. § 5705(b)(1)(A). The Secretary must also release such records to a federal executive agency if that agency requires the documents "for participation by [VA] in a health-care program with such agency or provider." § 5705(b)(1)(B). A criminal or civil law enforcement agency responsible for "the protection of the public health or safety" may access the records through a written request. § 5705(b)(1)(C). The Secretary must release the records to "health care personnel, to the extent necessary to meet a medical emergency affecting the health or safety of any individual." § 5705(b)(1)(D). Additionally, section 5705 does not prohibit the release of medical quality assurance records within VA. *See* § 5705(b)(5) ("Nothing in this section shall be construed as limiting the use of [medical quality assurance records] within the Department.").

Regulations promulgated by the Secretary define the nature and the scope of the documents considered confidential and privileged under 38 U.S.C. § 5705. *See* 38 C.F.R. §§ 17.500 through 17.511. Among these are "[m]onitoring and evaluation reviews conducted by a facility," including "[m]ortality and morbidity reviews" and "[i]nfection control review and surveillance." § 17.501(a)(1), (a)(1)(vi) & (a)(1)(vii). Also included are "[f]ocused reviews which address specific issues or incidents," reviews that target specific facilities, and reviews conducted by external entities to assess facility compliance with VA program requirements. § 17.501(a)(2)-(4). A variety of documents are explicitly exempted from the confidentiality requirements. *See* § 17.501(g)(1)-(15). For example, quality assurance documents that do not identify "either implicitly or explicitly, individual practitioners, patients, or reviewers" are not considered privileged and confidential. § 17.501(c)(1). Similarly, "[s]ummary documents" that

8

contain "major overall findings, but which do not identify individual healthcare practitioners, even by implication" are not confidential. § 17.501(g)(2). Importantly, in order for the Secretary to properly withhold a document as privileged, the underlying activity must comply with the requirements of 38 C.F.R. § 17.501(b), which reads,

> The Under Secretary for Health, Regional Director or facility Director will describe in advance in writing those quality assurance activities included under the classes of healthcare quality assurance reviews listed in paragraph (a) of this section. Only documents and parts of documents resulting from those activities which have been so described are protected by 38 U.S.C. § 5705 and the regulations in §§ 17.500 through 17.511. If an activity is not described in a VA Central Office or Regional policy document, this requirement may be satisfied at the facility level by description in advance of the activity and its designation as protected in the facility quality assurance plan or other policy document.

### 2. In Camera Review

Taking the appellant's latter contention first, the Court concludes that the argument fails in two respects. First, to the extent that any appellate court would undertake in camera review of evidence, such action is typical only when the evidence in question was first reviewed in camera by the lower court. *See Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1262 n. 26 (11th Cir. 2008) (conducting in camera review of documents that the district court had previously reviewed in camera, but noting that "we do not suggest that an appellate *in camera* review is appropriate in any other case"); *Hale v. U.S. Dep't of Justice*, 99 F.3d 1025, 1029 (10th Cir. 1996) (noting that, where "the district court's conclusions were based on an *in camera* review of the documents," the reviewing court may exercise its discretion to review the documents in camera). Whether the Court may exercise its discretion to review documents that were reviewed in camera by the Board is a question that we need not reach, however, as neither party disputes that the Board did not have access to the investigative report at issue.

Second, and more important, the Court does not have jurisdiction to review evidence that was not before the Board. 38 U.S.C. § 7252(b); *Bonhomme v. Nicholson*, 21 Vet.App. 40, 43 (2007) ("The authority of the Court . . . is limited to reviewing the correctness of the Agency's factual and legal conclusions based on the record before the agency *at the time of its decision*."); *Byrd v. Nicholson*, 19 Vet.App. 388, 391 (2005) ("'Review in the Court shall be on the record of proceedings before the Secretary and the Board.'" (quoting 38 U.S.C. § 7252(b)); *Redding v. West*, 13 Vet.App. 512, 515 (2000) ("The Court is precluded by statute from considering any

material that was not contained in the 'record of proceedings before the Secretary and the Board.'" (internal citations omitted)). As discussed below, however, it is not clear whether the Board could have compelled the Secretary to provide the Board with limited access to the VAMC report.

### *3. Secretary's Description of the VAMC Report*

The appellant's first contention, that the Secretary did not properly comply with his own regulations by failing to describe, in advance and in writing, the VAMC report as a quality assurance record, is one that the Board did not address. *See* R. at 3-4. As the appellant correctly points out, the Secretary fails, in his brief, to respond to this argument. App. Reply Br. at 3. The record is also devoid of any document put forth by the Secretary to prove that the VAMC investigation and report qualify as quality assurance activities. Although this Court has not addressed whether the regulation in question amounts to a threshold hurdle for the Secretary to surmount in order to withhold a document, other courts have taken that view. *See, e.g., Bethel v. United States*, 242 F.R.D. 580, 585 (D. Colo. 2007) (compelling disclosure of certain documents after determining that the Secretary had failed to provide any document "which establishes that the claimed [activity] was 'designated by the reviewing office *at the outset* of the review' as privileged, as is required to invoke the protections of 38 U.S.C. § 5705." (quoting 38 C.F.R. § 17.501(a)(1)(2)). It seems clear, then, that the Secretary's own regulations require VA to make some showing as to whether it described, in advance and in writing, the quality assurance activity for which it seeks "to invoke the protections of 38 U.S.C. § 5705." *Bethel*, 242 F.R.D. at 585. If the Secretary is not able to make such a showing, then it follows that any such document is not privileged and must be released to the appellant.[2]

Moreover, although the statutory provisions governing quality assurance activities seem to prohibit the release of properly privileged documents to veterans seeking benefits, it is not clear to the Court why the Board, as a wholly contained subset of VA, would not be able to

---

[2] At this point, we need not address whether or how the protections afforded by 38 U.S.C. § 5705 affect the extent to which medical quality assurance records may be discoverable in civil actions brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), as such suits are beyond the Court's jurisdiction. *See Loving v. Nicholson*, 19 Vet.App. 96, 101 (2005) (noting that "'the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States' for certain torts committed by federal employees while acting within the scope of their employment." (quoting 28 U.S.C. § 1346(b)). Specifically, the Court need not decide whether the privilege rules would be identical in an FTCA claim, nor are we compelled to address any of the forum-shopping issues implicated by the parties' arguments.

access the records for its own review if only to determine whether the records are indeed privileged. *See* 38 U.S.C. § 5705(b)(5) ("Nothing in this section shall be construed as limiting the use of [medical quality assurance records] within the Department."); *see also Boone v. Shinseki*, 22 Vet.App. 412, 414 (2009) ("[T]he Board is not an independent entity, but is part of VA . . . . " (citing 38 U.S.C. § 7101)). Accordingly, the Board should consider whether it may review medical quality assurance records in order to determine if VA should release the documents to the veteran.[3] In any event, as explained more fully below, this is an issue that the Board should address in the first instance on remand.

## C. Remand

On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, to the extent that they are viable in light of this decision. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Board must consider any such evidence or argument submitted and shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court). *See also Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also take care to discuss any and all potentially applicable provisions of law in rendering its decision. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (holding that "the Board's refusal to acknowledge and consider [applicable law] is 'arbitrary, capricious, an abuse of discretion,' and 'not in accordance with the law,' and must be set aside as such.") (internal citations omitted).

The Board should also determine whether the Secretary has complied with the statutory and regulatory provisions governing the confidentiality of quality assurance activities. Specifically, the Board should assess whether the Secretary properly described, in advance and in writing, the nature of the VAMC investigation and report and whether it was intended to be protected as a quality assurance activity. If necessary, the Board should consider whether it may access the VAMC report for the purposes of determining the applicability of the confidentiality protections afforded by 38 U.S.C. § 5705.

---

[3] To ensure fair process, the Board cannot rely on such documents in making a decision on the merits of a veteran's claim unless it first determines that VA may release the documents to the veteran. *See Austin v. Brown*, 6 Vet.App. 547 (1994); *Thurber v. Brown*, 5 Vet.App. 119 (1993).

## IV. CONCLUSION

After the Court's consideration of the appellant's and the Secretary's briefs, and its review of the record, the Board's August 10, 2007, decision is VACATED and the matter REMANDED to the Board for further proceedings consistent with this decision. The appellant's motion to expedite the appeal is DISMISSED as moot.