# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-2345

Billy D. McCarroll, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided November 7, 2016)

*Matthew J. Ilacqua*, of Providence, Rhode Island, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Thomas E. Sullivan*, Deputy Assistant General Counsel; and *Rudrendu Sinhamahapatra*, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*; KASOLD, LANCE, SCHOELEN, PIETSCH, BARTLEY, and GREENBERG, *Judges*; and HAGEL, *Senior Judge*.[1]

LANCE, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed an opinion concurring in part in which SCHOELEN, *Judge*, joined. HAGEL, *Senior Judge*, filed a dissenting opinion in which GREENBERG, *Judge*, joined.

LANCE, *Judge*: The appellant, veteran Billy D. McCarroll, appeals through counsel a June 4, 2014, decision of the Board of Veterans' Appeals (Board) that, in part, denied entitlement to an initial compensable disability rating for hypertension.[2] Record (R.) at 1-14. This case was submitted to a panel for decision on January 15, 2016, and a panel of the Court heard oral argument

---

[1] Judge Davis became Chief Judge on October 10, 2016. Judge Hagel is a recall-eligible judge who has been recalled to further service by the Chief Judge. 38 U.S.C. § 7257(b)(1); U.S. Vet. App. Misc. No. 09-16 (Oct. 13, 2016).

[2] The Court lacks jurisdiction over the appellant's claim for entitlement to service connection for liver disease, which the Board remanded, and it will not be addressed further. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000).

on April 12, 2016.[3]  On July 1, 2016, this case was submitted to the full Court for review pursuant to part VII of the Court's Internal Operating Procedures.

For the reasons that follow, the Court will affirm that part of the Board's June 2014 decision now on appeal.  In addition, the Board dismissed the appellant's claims for entitlement to service connection for a neck disorder, bilateral hearing loss, tinnitus, and sinusitis, as well as his claims for entitlement to increased initial disability ratings for left shoulder strain, right carpal tunnel syndrome, and choroidal nevus of the right eye.  R. at 9.  As the appellant presents no argument as to those determinations, the Court will deem those matters abandoned and will accordingly dismiss the appeal as to those issues.  *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc).

## I. BACKGROUND

The appellant served in the U.S. Army from December 1983 to September 1992 and from January 1994 to August 2009.  R. at 724-25.  A September 14, 2008, service treatment record (STR) reflects blood pressure readings of 132/95 and 128/95.  R. at 946.  A March 2, 2009, STR noted a history of borderline hypertension.  R. at 928.  The examiner recorded blood pressure readings of 112/79, 144/92, and 142/88, and recommended a five-day blood pressure check.  R. at 928.  Records dated between March 3, 2009, and March 5, 2009, note blood pressure readings of 128/88, 138/80, 156/100, 148/96, 120/92, and 126/90.  R. at 761, 919.  On March 5, 2009, the appellant filed a claim for entitlement to service connection for hypertension.  R. at 786-96.

On April 1, 2009, a private cardiologist prescribed the appellant Lisinopril,[4] 10 mg.  R. at 755-57.  The following day, the appellant underwent a VA examination; the examiner observed that "[the appellant] has had occasional blood pressure elevations at routine physical examinations."  R. at 739.  The examiner noted that the appellant had just been prescribed Lisinopril by his cardiologist and he diagnosed the appellant with essential hypertension.  R. at 739, 741.  That same day, the appellant's blood pressure was measured as 141/94 in the right arm while sitting, 117/78 in the left arm while sitting, and 116/79 while standing.  R. at 470.

---

[3] Matthew J. Ilacqua, of Providence, Rhode Island, argued for the appellant.  Nicolas R. Esterman, of Washington, D.C., argued for the Secretary.

[4] Lisinopril is a medication prescribed for hypertension. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1065 (32d ed. 2012).

In an October 2009 rating decision, the Salt Lake City, Utah, VA regional office (RO) granted service connection for hypertension and assigned a noncompensable rating. R. at 674-79, 683-705. The appellant filed a Notice of Disagreement in October 2009, R. at 673, and perfected his appeal in October 2010, R. a 613-15.

A private medical record from May 2010 reflects a blood pressure reading of 148/95. R. at 533. In November 2010, the appellant underwent another VA examination. R. at 584-89. The examiner noted that the appellant's blood pressure "demonstrates good control with normal readings" and that the appellant's Lisinopril dosage had increased to 20 mg. R. at 585. The appellant's blood pressure was recorded as 133/86 on March 31, 2011, R. at 458, and as 127/84 on July 9, 2012, R. at 343. At a November 2012 Board hearing, the appellant testified that his diastolic blood pressure readings were over 100 "two or three times" before he began taking blood pressure medication. R. at 245-46. He also testified that he believed his blood pressure would be higher if he were not taking his medication. R. at 244-45.

In June 2014, the Board denied entitlement to an initial compensable rating for hypertension under 38 C.F.R. § 4.104, diagnostic code (DC) 7101 (hypertensive vascular disease). R. at 1-14. The Board found that "[the appellant's] hypertension has not manifested with diastolic pressure predominantly 100 or more, with or without medication; or, systolic pressure predominantly 160 or more throughout the initial rating period." R. at 4. The Board acknowledged the appellant's argument that he would meet the criteria for a 10% disability rating if he were not using medication. R. at 8. The Board determined, however, that this assertion was "inaccurate," as "prior to being placed on medication, the [appellant] was diagnosed with occasional slightly elevated blood pressure readings" and "the preponderance of the evidence shows he does not have a history of diastolic pressure predominantly 100 or more." R. at 8-9. This appeal followed.

## II. THE PARTIES' ARGUMENTS

The appellant argues that the Board erred when it denied entitlement to a compensable rating for hypertension on a schedular basis and when it determined that he was not entitled to referral for consideration of whether an extraschedular rating was warranted. Appellant's Brief (Br.) at 4-19. With respect to his schedular evaluation, the appellant raises three contentions. First, he asserts that the Board "failed to properly address the effects of [his] need for continuous medications for control

of his hypertension" and misinterpreted the rating criteria for hypertension under DC 7101. *Id.* at 5, 4-16. Specifically, he argues that the Board violated the Court's holding in *Jones v. Shinseki*, 26 Vet.App. 56, 63 (2012), by failing to discount the ameliorative effects of his blood pressure medication. *Id.* at 10-11. The appellant contends that, without medication, his blood pressure would either meet the criteria for a higher disability rating or, at a minimum, more nearly approximate the criteria for a higher evaluation. *Id.* at 8-11 (citing 38 C.F.R. §§ 4.3 (2016), 4.7 (2016)). He further asserts that the issue of what his blood pressure would be without medication is a question requiring medical expertise and that the Board therefore violated *Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991), when it determined that he would not meet the criteria for a compensable rating were he not taking medication without citing any supporting medical evidence. *Id.* at 5-7, 9.

Second, and in the alternative, the appellant argues that, even assuming that the Board was permitted to consider the ameliorative effects of his medication, it erred by failing to discuss whether his disability picture more nearly approximated the criteria for a higher disability rating. *Id.* at 13 (citing 38 C.F.R. § 4.7). Finally, he asserts that the Board clearly erred when it determined that he did not have a history of diastolic pressure readings of 100 or more and, thus, that he did not satisfy the criteria for a 10% disability rating under DC 7101. *Id.* at 14-15 (citing R. at 919).

With respect to the issue of referral for extraschedular consideration, the appellant contends that the Board erred by failing to discuss whether referral was warranted. *Id.* at 16-19. In particular, he argues that "the rating criteria, as interpreted by the Board, do not address [his] specific disability picture," as there is "a medical question as to whether, but for his use of medication, he would have compensable blood pressure readings." *Id.* at 18. He asks the Court to vacate and remand the Board's decision. *Id.* at 19.

The Secretary responds that the Board did not err in denying entitlement to a compensable disability for hypertension on either a schedular or extraschedular basis. Secretary's Br. at 7-28. With respect to the effects of the appellant's blood pressure medication, the Secretary contends that DC 7101 contemplates "a need for continuous medication to control the hypertension" and, thus, that *Jones* is inapplicable. *Id.* at 15-17. He argues that the Board did not clearly err when it determined that the appellant did not have diastolic blood pressure readings that were predominantly 100 or higher, systolic blood pressure readings that were predominantly 160 or higher, or a history of diastolic blood pressure predominantly 100 or more. *Id.* at 20; *see* 38 C.F.R. § 4.104, DC 7101

4

(2016). Moreover, the Secretary asserts that § 4.7 is inapplicable in this case, as "'there is no question as to which evaluation shall be applied when a veteran does not satisfy all of the required criteria of the higher rating but does satisfy all of the criteria of the lower rating.'" Secretary's Br. at 21, 18-21 (quoting *Middleton v. Shinseki*, 727 F.3d 1172, 1178 (Fed. Cir. 2013)). Finally, the Secretary argues that the Board was not required to discuss the issue of entitlement to referral for extraschedular consideration, contending that the issue was neither raised by the appellant nor reasonably raised by the record. *Id.* at 23-28. He asks the Court to affirm the Board's decision. *Id.* at 28.

## III. ANALYSIS

### A. Schedular Evaluation

The appellant's arguments regarding the proper schedular evaluation for his hypertension turn, in large part, on two related issues: first, whether the criteria in DC 7101 contemplate the effects of medication, including whether *Jones* prohibits the Board from considering those effects when evaluating hypertension; and, second, whether his disability picture, with or without medication, "more nearly approximates" the criteria for a 10% disability rating than his current noncompensable evaluation.

### 1. DC 7101, Jones, and the Effects of Medication

The Court will first turn to the issue of whether DC 7101 contemplates the effects of medication. As the Court explained in *Jones*, "the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria." 26 Vet.App. at 63; *see Massey v. Brown*, 7 Vet.App. 204, 208 (1994) ("The Board's consideration of factors which are wholly outside the rating criteria provided by the regulations is error as a matter of law."). Thus, if DC 7101 does not specifically contemplate the effects of medication, the Board is required pursuant to *Jones* to discount the ameliorative effects of medication when evaluating hypertension. Conversely, if DC 7101 *does* specifically contemplate the effects of medication, then *Jones* is inapplicable. The Court holds that DC 7101 contemplates the effects of medication and, therefore, that *Jones* does not apply.

"The starting point in interpreting a statute [or regulation] is its language." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *see Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994)

5

("The canons of construction of course apply equally to any legal text and not merely to statutes."). "Where a statute's language is plain, and its meaning clear, no room exists for construction." *Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991), *aff'd sub nom. Brown v. Gardner*, 513 U.S. 115 (1994). Statutes and regulations "must be considered as a whole and in the context of the surrounding statutory [and regulatory] scheme." *Gazelle v. McDonald*, 27 Vet.App. 461, 464 (2016) (*citing King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)).

Pursuant to DC 7101, a 60% disability rating is warranted for hypertension with "[d]iastolic pressure predominantly 130 or more." 38 C.F.R. § 4.104, DC 7101. A 40% evaluation is warranted for "[d]iastolic pressure predominantly 120 or more," and a 20% disability rating is warranted for "[d]iastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more." *Id.* A 10% evaluation is warranted in three circumstances: first, diastolic pressure predominantly 100 or more; second, systolic pressure predominantly 160 or more; or third, as a "minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control." *Id.* Note (1) to DC 7101 states, in part, that "the term hypertension means that the diastolic blood pressure is predominantly 90mm. or greater." *Id.*

The criteria for compensable evaluations under DC 7101 thus contemplate two factual alternatives. First, a veteran whose blood pressure is currently controlled by medication—i.e., whose blood pressure does not otherwise meet the criteria for a compensable evaluation—but who has a history of diastolic pressure predominantly 100 or more is entitled to receive the minimum compensable evaluation of 10%. *Id.* Second, a veteran whose blood pressure is currently elevated to varying degrees is entitled to evaluations ranging from 10% to 60%. *Id.* Read together, *see Gazelle*, 27 Vet.App. at 464, these two scenarios clearly contemplate the effects of medication: either a veteran's blood pressure is controlled by medication, warranting a 10% evaluation if there is a history of elevated systolic pressure, or it is not, in which case the actual blood pressure level determines the disability rating.

The Court's analysis in *Jones* supports this reading of DC 7101. In that case, the Court held that 38 C.F.R. § 4.114, DC 7319, which sets forth the rating criteria for irritable bowel syndrome, did not contemplate the effects of medication. 26 Vet.App. at 63. The Court explained that "[t]he Secretary has demonstrated . . . that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability" and cited 38 C.F.R. § 4.71a, DC 5025

6

("Fibromyalgia"), as an example of a DC that *does* contemplate the effects of medication. *Id.* at 62. DC 5025, like DC 7101, only explicitly references medication in its criteria for a 10% evaluation. 38 C.F.R. § 4.71a, DC 5025 (2016).

Although the appellant contends that the regulation, its implementing comments in the *Federal Register*, and VA's *M21-1 Adjudication Procedures Manual* (M21-1) "show[] that the Secretary intends to compensate veterans whose condition is 'brought under control' by medications such that the condition no longer reaches blood pressure readings the rating criteria recognize as compensable," Appellant's Br. at 12, his arguments are not persuasive. First, as discussed above, the plain language of the rating criteria listed under DC 7101 demonstrates that this diagnostic code, read as a whole, contemplates the effects of medication in assigning a disability rating for hypertension. *See Gazelle*, 27 Vet.App. at 464; *Gardner*, 1 Vet.App. at 587-88.

Second, the sections of the *Federal Register* cited by the appellant[5] do not alter the Court's analysis. In 1997, the Secretary amended DC 7101. 62 Fed. Reg. 65,207, 65,215 (Dec. 11, 1997). In doing so, he shifted the language providing a 10% evaluation on the basis of continuous medication with a history of diastolic pressure predominantly 100 or more from a separate note into the criteria for a 10% evaluation, as it "represents part of the evaluation criteria." *Id.* He explained that "the evaluation for hypertension is based not on the amount of medication required to control it, but on the level of control that can be achieved." *Id.* This explanation makes clear that the use of medication is directly addressed and contemplated by the evaluation criteria under DC 7101.

---

[5] To support his argument that the Board misinterpreted the criteria for a 10% disability rating under DC 7101 by failing to discount the ameliorative effects of his medication, the appellant quotes the Secretary's comment in the *Federal Register* that "[w]hether a ten-percent evaluation is warranted when continuous medication is required is based on a case-by-case assessment of each condition and the usual effects of treatment." Appellant's Br. at 12 (quoting 62 Fed. Reg. 65,207, 65,215 (Dec. 11, 1997)). The appellant thus creates the impression that the Secretary's consideration of the need for continuous medication under DC 7101 may vary from case to case depending upon the circumstances of a particular claimant's condition. However, when read in context, it is clear that the Secretary is instead explaining why he chose to include a minimum rating based on continuous medication only for certain DCs, including DC 7101. *See* 62 Fed. Reg. at 65,215.

To the extent that the appellant also cites the *Federal Register* to support his contention that DC 7101 does not simultaneously require both the use of medication and current diastolic blood pressure readings of predominantly 100 or more, *see* Appellant's Br. at 12, there is no dispute over this issue, as the Secretary acknowledges that the minimum compensable rating for hypertension requires only a *history* of elevated diastolic pressure, as opposed to *currently* elevated diastolic pressure, *see* Secretary's Br. at 9.

Third, although the appellant cites the predecessor to the M21-1 as requiring VA adjudicators to "'start with . . . the readings taken as part of a . . . diagnostic workup period leading to the prescription of medication'" as evidence that DC 7101 does not contemplate the effects of medication, Appellant's Br. at 12 (quoting VA Adjudication Procedures Manual Rewrite (M21-1MR) pt. III, subpt. iv, ch. 4, § E.20.e) (emphasis removed), it is not clear whether that provision relates to DC 7101 as a whole or merely to whether a veteran whose blood pressure is controlled by medication satisfies the criteria for a 10% evaluation. The current M21-1, however, includes the cited language as part of its instructions on how to evaluate whether a veteran's "past diastolic pressure (before medication was prescribed) was predominantly 100 or greater" when "current predominant blood pressure readings are non-compensable." M21-1, pt. III, subpt. iv, ch. 4, § E.1.e. In any event, the appellant fails to explain how his citation to the M21-1's predecessor, which focuses upon the relevant period for determining whether a claimant has a *history* of blood pressure readings, supports his broader argument that the Secretary intended to compensate *all* veterans whose blood pressure readings are controlled by medication. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments).

In sum, as the plain language of DC 7101 contemplates the effects of medication, and because the Secretary's comments in the *Federal Register* at the time of its 1997 amendment support this reading, the Court holds that DC 7101 contemplates the effects of medication and, thus, that *Jones* is not applicable. Accordingly, the Court rejects the appellant's arguments that the Board erred when it failed to consider whether he would be entitled to a compensable rating if he were not taking medication. *See* Appellant's Br. at 8-11. As the appellant's contentions that a medical opinion was required to properly discount the effects of his medication and that the Board violated *Colvin* when it relied on its own medical judgment are premised on his erroneous reading of DC 7101, *id.* at 5-7, 9, the Court rejects those arguments, as well.

### 2. The Appellant's Remaining Arguments

Having determined that *Jones* does not apply and that the Board did not err by considering the ameliorative effects of the appellant's medication, the Court will address the appellant's remaining arguments that the Board erred when it found that he did not more nearly approximate the criteria for a 10% evaluation and did not have a history of diastolic pressure predominantly 100 or more. *See* Appellant's Br. at 13-15.

Turning first to the appellant's contention that he does, in fact, have a history of diastolic pressure predominantly 100 or more, *id.* at 15, the Court holds that the Board did not clearly err when it determined that he did not, R. at 8; *see Hood v. Shinseki*, 23 Vet.App. 295, 299 (2009) ("The Court reviews factual findings under the 'clearly erroneous' standard such that it will not disturb a Board finding unless, based on the record as a whole, the Court is convinced that the finding is incorrect."). In support of his argument, the appellant cites medical records documenting six blood pressure readings prior to when he began taking medication. Appellant's Br. at 15 (citing R. at 919). Those readings, all dated March 2, 2009, are 144/92, 142/86, 128/88, 138/80, 156/100, and 148/96. R. at 919. Although there is one reading demonstrating diastolic pressure of 100, that single reading does not demonstrate clear error in the Board's finding that the appellant did not have a history of diastolic pressure *predominantly* 100 or more, as required by the rating criteria. *See* 38 C.F.R. § 4.104, DC 7101. Rather, to accept the appellant's argument would be to omit the key word "predominantly" from the rating criteria, which the Court cannot do. *See* 38 U.S.C. § 7252(b) ("The Court may not review the schedule of ratings for disabilities . . . or any action of the Secretary in adopting or revising that schedule."); *Moskal v. United States*, 498 U.S. 103, 109 (1990) (reiterating "the established principle that a court should 'give effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955))); *see Wingard v. McDonald*, 779 F.3d 1354, 1356–57 (Fed. Cir. 2015) (discussing the Court's inability to review the schedule of ratings for disabilities).

Similarly, although the appellant contends that the Board erred by failing to consider whether he more nearly approximated the criteria for a 10% evaluation, Appellant's Br. at 13-16, the Court is not persuaded. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). To qualify for a 10% evaluation under DC 7101, a veteran must satisfy one of three alternatives: first, current diastolic pressure predominantly 100 or more; second, current systolic pressure predominantly 160 or more; or third, a history of diastolic pressure predominantly 100 or more with blood pressure controlled by continuous medication. 38 C.F.R. § 4.104, DC 7101. "Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7.

9

In its decision, the Board did not specifically discuss whether the appellant satisfied either the first or second alternative for a 10% evaluation, but it determined that he had "diastolic pressure predominantly less than 100, and systolic pressure predominantly less than 150." R. at 8. With respect to the third alternative, the Board acknowledged that the appellant "clearly requires continuous medication" but found that "the preponderance of the evidence shows he does not have a history of diastolic pressure predominantly 100 or more," and thus that he "more nearly approximated the assigned noncompensable rating."[6] R. at 9 (citing, inter alia, 38 C.F.R. § 4.7).

Although the appellant argues that he may satisfy the first or second alternatives were the Board to discount the effects of his medication, Appellant's Br. at 15-16, the Court has already considered and rejected that argument above. With respect to the third alternative, the Court is not persuaded that the Board erred when it determined that his diastolic pressure history more nearly approximated the noncompensable level. As noted above, the Board specifically determined that the appellant did not satisfy the criteria for a 10% evaluation. R. at 9. Moreover, the Court is not convinced that the blood pressure readings cited by the appellant "more closely approximate" diastolic pressure of pressure 100 or more, as opposed to diastolic pressure predominantly 90 or more as required by a noncompensable evaluation. *See* 38 C.F.R. § 4.104, DC 7101, Note (1) (defining hypertension for VA purposes as "diastolic blood pressure [that] is predominantly 90 mm. or greater"). In short, the Board properly determined that there was no question as to which evaluation applied, and § 4.7 therefore was not for application. *See* 38 C.F.R. § 4.7.

Ultimately, the Court is not persuaded that the Board clearly erred when it determined that the appellant was not entitled to a compensable evaluation for hypertension under DC 7101. *See Johnston v. Brown*, 10 Vet.App. 80, 84 (1997) (the Board's assignment of a disability rating is a

---

[6] The M21-1 specifically prohibits adjudicators from assigning a 10% evaluation if a veteran meets only one of the two criteria for the third alternative:

> Do not assign a 10[%] evaluation based upon a showing of one of the two conjunctive criteria above by invoking the benefit of the doubt rule. . . . When either criterion is simply not shown (for example, the claimant is using prescribed anti-hypertensive medication but diastolic pressure has never been predominantly 100 or greater) the evidence is not in relative equipoise on whether a 10-percent evaluation is appropriate and the disability picture does not more nearly approximate the 10-percent criteria.

M21-1, pt. III, subpt. iv, ch. 4, § E.1.e. The M21-1 acknowledges, however, that § 4.7 "may be applicable to whether the evidence *supports* each criterion." *Id.*

question of fact, which the Court reviews under the "clearly erroneous" standard).  Further, as the Board's decision regarding the proper schedular evaluation is understandable and facilitates judicial review, the Court holds that the Board provided an adequate statement of reasons or bases to support that determination.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

## B.  Extraschedular Referral

As a final matter, the Court rejects the appellant's contention that the Board erred by failing to address whether referral for extraschedular consideration was warranted.  Appellant's Br. at 16-19. "[T[he issue of whether referral for extraschedular consideration is warranted must be argued by the claimant or reasonably raised by the record." *Yancy v. McDonald*, 27 Vet.App. 484, 495 (2016); *see Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (the Board is required to consider all issues raised by a claimant or reasonably raised by the evidence of record), *aff'd sub nom. Robinson v. Shinseki* 557 F.3d 1355 (Fed. Cir. 2009).  The Board is required to discuss referral "[w]here there is evidence in the record that shows exceptional or unusual circumstances," *Colayong v. West*, 12 Vet.App. 524, 536 (1999), or where "the evidence of record suggests that a schedular rating may be inadequate," *Thun v. Peake*, 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009).  "Where, however, [38 C.F.R.] '§ 3.321(b)(1) [is] neither specifically sought by [the claimant] nor reasonably raised by the facts found by the Board,' the Board is not required to discuss whether referral is warranted." *Yancy*, 27 Vet.App. at 494 (quoting *Dingess v. Nicholson*, 19 Vet.App. 473, 499 (2006), *aff'd*, 226 F. App'x 1004 (Fed. Cir. 2007)).

The appellant does not contend that he specifically raised this issue below.  Accordingly, for the Board to have erred by failing to discuss referral for extraschedular consideration, that issue must have been reasonably raised by the record.  It was not.  Although the appellant asserts that "the rating criteria, as interpreted by the Board, do not address [his] specific disability picture," as there is "a medical question as to whether, but for his use of medication, he would have compensable blood pressure readings," Appellant's Br. at 18, the Court is not persuaded.  Rather, as DC 7101 explicitly contemplates the effects of medication, the use of medication cannot constitute an unusual disability picture, and the question of what the appellant's current disability would be absent his medication is not relevant.  *See* 62 Fed. Reg. at 65,215 ("[T]he evaluation for hypertension is based not on the amount of medication required to control it, but on the level of control that can be achieved.").

11

As referral for extraschedular consideration was neither argued by the appellant nor reasonably raised by the record, the Court holds that the Board did not err in failing to discuss that issue. *See Yancy*, 27 Vet.App. at 494. Accordingly, the Court will affirm that part of the Board's decision denying entitlement to a compensable disability evaluation for hypertension.

## IV. CONCLUSION

As DC 7101 explicitly contemplates the ameliorative effects of medication, the Board did not err when it considered the effects of the appellant's medication when evaluating his hypertension. Moreover, the Board did not clearly err when it determined that the appellant did not have a history of diastolic pressure predominantly 100 or more or when it determined that his hypertension did not more nearly approximate the criteria for a 10% evaluation. Finally, as referral for extraschedular consideration was not raised by the appellant below or reasonably raised by the record, the Board did not err by failing to discuss that issue.

Therefore, upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, that part of the Board's June 4, 2014, decision denying entitlement to an initial compensable disability rating for hypertension is AFFIRMED. The appeal is DISMISSED as to the issues of entitlement to service connection for a neck disorder, bilateral hearing loss, tinnitus, and sinusitis, and entitlement to increased initial disability ratings for left shoulder strain, right carpal tunnel syndrome, and choroidal nevus of the right eye.

KASOLD, *Judge*, with whom SCHOELEN, *Judge*, joins, concurring in part: I agree with the result reached in today's decision. The Board's analysis and application of diagnostic code (DC) 7101 was proper, and the Board decision on appeal should be affirmed. I write separately, however, because Mr. McCarroll's argument that *Jones v. Shinseki* requires remand on the facts in his case illustrates that the *Jones* holding–i.e., that "the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria," *Jones v. Shinseki*, 26 Vet.App. 56, 63 (2012)–is erroneous and should now

be overturned.  *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) ("Only the en banc Court may overturn a panel decision.").

*Jones* is fairly cited by Mr. McCarroll for the proposition that it is impermissible to deny a compensable rating when the veteran raises the possibility that his symptoms would rise to a compensable level if he were not taking his required medication.  *See* Appellant's Brief (Br.) at 10 ("[I]f the only reason Mr. McCarroll's blood pressure readings were noncompensable was because of the therapeutic effects of his medication[], it would be impermissible to deny him a compensable rating based on those therapeutic effects."); *see Jones*, *supra*.  Although *Jones* has been artfully distinguished by the majority opinion being issued today, the better course is to recognize that the *Jones* holding is predicated on a misunderstanding of the rating schedule and a failure to appreciate the ramifications of that holding and is therefore wrongly decided.  It should be overturned.

*The Rating Schedule*

The essence of the rating schedule is that veterans are compensated for their symptoms and, specifically, how those symptoms would, on average, impair a person's earning capacity.  38 U.S.C. § 1155 ("The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries.  The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations."); 38 C.F.R. § 4.2 (2016) (noting that it is crucial for the rating to "accurately reflect the elements of disability present"); 38 C.F.R. § 4.10 (2016) ("The basis of disability evaluations is the ability of . . . [an] organ of the body to function under the ordinary conditions of daily life including employment."); 38 C.F.R. § 3.321(b)(1) (2016) ("Ratings shall be based as far as practicable[] upon the average impairments of earning capacity[.]").

To accomplish the task of compensating a veteran based on the average impairment in earning capacity, the diagnostic codes in the disability rating schedule ask what the veteran's symptoms are, compared to a list of symptoms of ascending severity in the rating schedule, which this Court is without authority to second-guess.  *See* 38 U.S.C. § 7252(b) ("The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule."); *Wanner v. Principi*, 370 F.3d 1124, 1130-31 (Fed. Cir. 2004) ("The Secretary's discretion over the [rating] schedule, including procedures followed and content selected, is insulated from judicial review with one recognized exception

13

limited to constitutional challenges."). The rating schedule does not ask what the symptoms *could be*, if not for various positive influences in a veteran's life, including medication.

Mr. McCarroll's arguments amply illustrate the distortion of the rating schedule created by *Jones*. He argues that his blood pressure readings were "skewed" by the ameliorative effects of his medication. Appellant's Br. at 11. But, the readings were not skewed. The introduction of medication did not "taint" the results or render them inaccurate or misleading. The readings reflect the actual level of Mr. McCarroll's blood pressure at the times the readings were taken, and they therefore reflect "the elements of disability present" at those times. 38 C.F.R. § 4.2. Because taking blood pressure medication is not an unusual phenomenon for people with high blood pressure, the readings also reflect the condition of Mr. McCarroll's body under "the ordinary conditions of life." 38 C.F.R. § 4.10. Otherwise stated, nothing in the rating schedule warrants subtracting whatever positive influences medication has on Mr. McCarroll's blood pressure.

### *Flaw in* Jones

A review of *Jones* reflects that its holding was predicated on an inaccurate premise. Specifically, the Court stated in *Jones* that the Secretary "demonstrated in other DCs that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability." 26 Vet.App. at 62. The Court then pointed to two other DCs (5026 and 6602) that the Court stated require VA adjudicators to expressly consider the ameliorative effects of medication. *Id*. However, neither of the two "other DCs" cited by the panel in *Jones* requires the Board to consider the "ameliorative effects" of medication. In DC 5025, a 10% disability rating is provided for fibromyalgia where symptoms "require continuous medication for control." 38 C.F.R. § 4.71a, DC 5025 (2016). In DC 6602, a 10% disability rating is provided for bronchial asthma if the record shows, inter alia, "intermittent inhalational or oral bronchodilator therapy." 38 C.F.R. § 4.97, DC 6602 (2016). These diagnostic codes require only that the Board consider the *fact* of medication usage, as a proxy for the seriousness of the condition; they do not require that the Board consider any "ameliorative effect."

Indeed, although some diagnostic codes mention the fact of medication usage as a rating criterion, none require the Board to make any affirmative use of information about the "ameliorative effects" of the medication. *See, e.g.*, 38 C.F.R. § 4.79, DC 6012 (2016) (DC for angle-closure glaucoma establishes a 10% rating "if continuous medication is required"); 38 C.F.R. § 4.88b, DC

14

6351 (2016) (DC for HIV-related illness allows a 30% rating with certain symptoms if the veteran is "on approved medication(s)"); 38 C.F.R. § 4.118, DC 7806 (2016) (DC for dermatitis or eczema provides ratings based, in part, on the type of medication used, including a 60% rating when there is "constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period").[7]

In sum, nothing about the rating schedule supports the *Jones* conclusion that the Board must affirmatively rule out any ameliorative effects of medication when assessing a veteran's disability picture.

### *Unacceptable Ramifications*

That the *Jones* holding should be overturned becomes even clearer when one considers the unacceptable consequences that flow inexorably from it. *Cf. United States v. Dixon*, 509 U.S. 688, 709-10 (1993) (noting that an earlier decision of the Court should be overturned because it was "wrong in principle," had "proved unstable in application," and was "a continuing source of confusion"). The requirement that the Secretary "may not consider the relief afforded by [a veteran's] medication when" applying the rating schedule, as *Jones* demands, *See Jones*, 26 Vet.App. at 63, invites medical speculation in trying to guess what a veteran's symptoms might be without the medication, or medical malpractice in the cessation of medication so that the veteran's symptoms without medication might be recorded. The former invites non-helpful guesswork by medical practitioners, *see Hood v. Shinseki*, 23 Vet.App. 295, 298-99 (2005) (medical opinions that are speculative have "little probative value"), and the latter raises, at a minimum, serious ethical concerns that no court should encourage. That *Jones* essentially requires the Board to consider

---

[7] Similar to the DC in *Jones*, DC 7101 does not require the Board to take into account any ameliorative effects of medications; the Board is to consider only the fact that the veteran may have particular blood pressure readings while taking "continuous medication for control." 38 C.F.R. § 4.104, DC 7101 (2016). Therefore, although I agree with today's ultimate decision, I disagree with the statement that DC 7101 asks the Board to consider the "effects" of medication. *Ante* at 6. The Board acted properly in denying a compensable rating because the DC does not contemplate the effects of medication and the Board did not take any such effects into account. Mr. McCarroll's diastolic pressure readings are not predominantly 100 or more, his systolic pressure readings are not predominantly 160 or more, and he has never had a history of diastolic pressure predominantly 100 or more. Therefore, under the plain language of the regulation, whether he "requires continuous medication for control" or not, he does not meet the requirements for a 10% rating. *See* § 4.104, DC 7101; *see also Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) ("On review, if the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994))). This was precisely the finding reached by the Board in this case. *See* Record at 4 (Board finding that "[t]he Veteran's hypertension has not manifested with diastolic pressure predominantly 100 or more, with or without medication; or, systolic pressure predominantly 160 or more throughout the initial rating period").

15

whether a medical examination is required to determine how serious a veteran's symptoms would have been in an alternate reality in which he or she was not taking his or her required medication should alone demonstrate the fallacy of the *Jones* holding.

*Closing*

I concur that there was no clear error in the Board's analysis for the reasons stated in today's controlling opinion, but, for the reasons stated above, the Court, now sitting en banc, should declare the *Jones* holding wrongly decided and overrule it. *See Bethea*, *supra*.

HAGEL, *Senior Judge*, with whom GREENBERG, *Judge*, joins, dissenting: I disagree with the majority's view that the Board did not err when it considered the ameliorative effects of Mr. McCarroll's medication by reading 38 C.F.R. § 4.104, Diagnostic Code 7101, *as a whole*, to determine that the diagnostic code contemplates the ameliorative effects of medication. The majority does not explain how it arrives at the conclusion that, because *one part* of the rating criteria under Diagnostic Code 7101 contemplates the ameliorative effects of medication, it necessarily follows that the *entire* diagnostic code contemplates the ameliorative effects of medication. *Ante* at 7.

The majority cites *Jones v. Shinseki*, 26 Vet.App. 56, 60 (2012), in which the Court held that the Board erred when it considered the effects of medication that were not adequately contemplated by the rating criteria for irritable bowel syndrome. The Court in *Jones* cited the language of the rating criterion for a 10% disability rating under § 4.71a, Diagnostic Code 5025 (fibromyalgia), as an example of how the Secretary considers the ameliorative effects of medication. *Id.* at 63. The entirety of that rating criterion, which remains unchanged since *Jones*, for a 10% disability rating for fibromyalgia is for symptoms "[t]hat require medication for control." 38 C.F.R. § 4.71a, Diagnostic Code 5025 (2016). In this case, the plain language of Diagnostic Code 7101 demonstrates that the Secretary included *three alternatives* to obtain a 10% disability rating, and only one contemplates the ameliorative effects of medication. 38 C.F.R. § 4.104, Diagnostic Code 7101 (2016) (10% disability rating requires "Diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; *minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for*

16

*control*.") (emphasis added); *see Tropf v. Nicholson*, 20 Vet.App. 317, 322 n.1 (2006) ( "[A] functioning system of laws must give primacy to the plain language of authorities."). Therefore, it is unclear how the majority can arrive at the conclusion that, given the plain language of Diagnostic Code 7101, the ameliorative effects of medication can be considered for all three alternatives to obtain a 10% disability rating. Accordingly, I believe that *Jones* applies to this case, and the Board erred when it considered the ameliorative effects of Mr. McCarroll's medication under the first two alternatives of the rating criteria for a 10% disability rating under Diagnostic Code 7101.

The majority also cites to the *Federal Register* where the Secretary amended Diagnostic Code 7101. *Ante* at 7. The majority quoted the Secretary where he moved the rating criteria, "a history of diastolic pressure predominantly 100 or more and continuous medication is required," from a separate note in Diagnostic Code 7101 to the rating criteria for a 10% disability rating. *Id.* citing 62 Fed. Reg. 65, 207, 65, 215 (Dec. 11, 1997). The majority concludes that the Secretary's explanation "makes clear that the use of medication is directly addressed and contemplated by the evaluation criteria under DC 7101." *Ante* at 7. However, the Secretary's final rule only discusses the third alternative for a 10% disability rating under Diagnostic Code 7101 and does not discuss the other two alternatives, which do *not* consider the ameliorative effects of medication. *See* 62 Fed. Reg. at 65,215. Therefore, I believe that the ameliorative effects of medication should *only* be considered under the third alternative under Diagnostic Code 7101, that is, whether a veteran has a history of diastolic pressure predominantly 100 or more, who requires continuous medication for control.

The majority also rejects Mr. McCarroll's contention, without any explanation, that a medical opinion was required to discount the ameliorative effects of medication and the Board violated *Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1990) (holding that the Board "must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion"). *Ante* at 8. Here, the Board found that Mr. McCarroll's "hypertension has not manifested with diastolic pressure predominantly 100 or more, *with or without medication*; or systolic pressure predominantly 160 or more throughout the initial rating period." R. at 4 (emphasis added). The Board made its own medical finding by considering the ameliorative effect of medication on Mr. McCarrolls's current diastolic and systolic pressure or, in other words, the first two alternatives of Diagnostic Code 7101. *See Jones*, 26 Vet.App. at 63; *Colvin*, 1 Vet.App.

17

at 172. Mr. McCarroll was prescribed medication for his hypertension while in service, R. at 757 (April 2009 prescription), he filed his claim for benefits for hypertension while in service, and a VA regional office granted his claim and assigned a noncompensable rating on September 1, 2009, the date after his separation from service, R. at 683-84 (October 2009 rating decision). Further, at the November 2010 VA medical examination in which the examiner took Mr. McCarroll's blood pressure readings, the examiner noted that Mr. McCarroll's medication dosage had been increased from his last prescription. R. at 585. Clearly, the Board should have considered that medication was at least a factor affecting Mr. McCarroll's blood pressure readings.

The Board, however, considered Mr. McCarroll's blood pressure readings from the November 2010 VA medical examination while he was on medication when it denied a compensable disability rating. R. at 8. In doing so, I believe the Board improperly considered the ameliorative effects of medication when evaluating Mr. McCarroll's hypertension under the first two alternatives of the rating criteria for a 10% disability rating. Because Mr. McCarroll was under medication at the time of the examination, I also believe that the Board should have discussed whether a medical opinion is required to address the question of what Mr. McCarroll's diastolic and systolic pressure would be, but for the use of medication. In my judgment, a medical examiner would be in the best position to review Mr. McCarroll's medical record to make some determination as to his diastolic and systolic blood pressure without medication.

This case presented the issue where a veteran is prescribed medication for a disability and the diagnostic code for that disability requires specifically measured medical readings to determine compensability. In this case, the Board found McCarroll's disability noncompensable and clearly did not consider that he was on medication since service when it used his blood pressure readings to support its finding. Therefore, for the reasons stated above, I would vacate the June 4, 2014, Board decision and remand the matter for the Board to provide adequate reasons or bases for its decision, which would limit its consideration of the ameliorative effects of Mr. McCarroll's medication only to the third alternative for a 10% disability rating under Diagnostic Code 7101 and, at the very least, to discuss whether a medical opinion is required to determine Mr. McCarroll's diastolic and systolic pressure absent his use of medication.

18