**Manuel B. BRILLO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–462.**

United States Court of Veterans Appeals.

Oct. 7, 1994.

Manuel Brillo, pro se.

Mary Lou Keener, Gen. Counsel; Norman G. Cooper, Asst. Gen. Counsel; R. Randall Campbell, Deputy Asst. Gen. Counsel; and Peter M. Donawick, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER and MANKIN, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion.

NEBEKER, Chief Judge:

The appellant, Manuel Brillo, appeals a February 2, 1993, Board of Veterans' Appeals (Board or BVA) decision which held that his claim to recognize Ninfa Palma as his spouse for VA benefits purposes was not well grounded. For the following reasons, and after consideration of the briefs of the parties and the record on appeal, we AFFIRM the Board's decision.

## I. Background

The appellant has recognized service in the Philippines during and after World War II. (According to the appellant, he relinquished his Filipino citizenship to become a U.S. citizen in 1992. Record (R.) at 189.) He married Consolacion Fernandez in March 1944. He moved to the United States after the War, and obtained an ex parte divorce in Nevada in March 1949 on the grounds of mutual separation for three years. R. at 32–33. The appellant returned to the Philippines in 1950. In May 1983, he underwent a marriage ceremony with Ninfa Palma in the Philippines. R. at 38. The appellant attempted to have the VA recognize Ninfa Palma as his spouse for benefits purposes in June 1983. He argued in support of his claim that his prior marriage to Consolacion Fernandez had been invalid because of various procedural irregularities, and that no certificate was signed at the marriage. R. at 48. He attached a copy of a certificate dated March 25, 1983, from the office of the Local Civil Registrar of Sara, Iloilo, stating that after a diligent search, no record of a certificate of the marriage to Consolacion Fernandez could be found. R. at 45. The appellant stated that this certification had been prepared at his request prior to the marriage ceremony with Ninfa Palma. R. at 48. In the alternative, he argued that, even if his first marriage had been valid, the Nevada divorce decree should be respected. *Id.* The VA regional office (RO) denied his request on the grounds that his 1983 marriage was invalid under Philippine law because a "marriage performed in the Philippines cannot be terminated by divorce anywhere ...," R. at 53, and, accordingly, he was not free to remarry in 1983.

In March 1984, the appellant sought reconsideration of his claim by arguing that there was never any marriage license for his first marriage. R. at 57. The RO denied his request for reconsideration in April 1984,

stating, "A careful review of our records shows we have a certified copy of the church record of the marriage between you and Consolacion Fernandez solemnized by Rev. Anselmo Tuares on March 24, 1944." R. at 60. The appellant tried to reopen his claim in March 1989 by arguing that Ninfa Palma was entitled to recognition as his spouse because Consolacion Fernandez, under Philippine law, could be presumed dead after a seven-year absence. R. at 74. The appellant stated that in 40 years, "I had no news about my first wife whether she is[,] or was[,] still alive or not, much less did I know her whereabouts." R. at 76. He also submitted a VA form, entitled "Statement of Disappearance," in which he indicated that the date Consolacion Fernandez disappeared was 1944. R. at 83; *see also* R. at 105, 107, 128. However, a field investigation in February 1991 determined that Consolacion Fernandez was still alive, that she had, in fact, lived with the appellant for more than three years in the early 1960s, and had last seen the appellant in 1972. R. at 134–36. In March 1991, a hearing officer, after reviewing all the pertinent evidence, found that "the preponderance of evidence indicates that it was the veteran who abandoned Consolacion, not the reverse." R. at 144.

Based on that information, the RO denied the appellant's claim. R. at 144. An appeal to the BVA followed. In a decision dated September 4, 1991, the BVA remanded the matter to the RO with instructions to get a District Counsel opinion on the issue of whether the appellant's March 1949 divorce was valid at that time. R. at 170. The District Counsel rendered the opinion that the extant Philippine law in 1949 did not recognize his Nevada divorce because that divorce decree was granted on the grounds of mutual separation, a basis for divorce not recognized by the Philippines. R. at 184. The RO again denied his claim to have Ninfa Palma recognized as his spouse. R. at 194. On subsequent appeal to the BVA on the grounds that the appellant was entitled to presume Consolacion Fernandez was dead and therefore his marriage to Ninfa Palma was valid, the Board concluded that the appellant had not presented a well-grounded claim.

## II. Analysis

The appellant's claim for benefits for Ninfa Palma hinges on whether he was entitled to presume Consolacion Fernandez was dead. Section 108 of title 38 of the United States Code provides in pertinent part:

(a) No State law providing for presumption of death shall be applicable to claims for benefits under laws administered by the Secretary.

(b) If evidence satisfactory to the Secretary is submitted establishing the continued and unexplained absence of any individual from that individual's home and family for seven or more years, and establishing that after diligent search no evidence of that individual's existence after the date of disappearance has been found or received, the death of such individual as of the date of the expiration of such period shall be considered as sufficiently proved.

The appellant argues that Philippine law applies (*see* 38 U.S.C. § 101(20) (Philippines not included in statutory definition of "State")), and that the Philippine law must be interpreted in light of California jurisprudence regarding the nearly identical California provision. The Philippine Civil Code has its own presumption of death provision which reads in pertinent part:

Any marriage subsequently contracted by any person during the lifetime of the first spouse of such person with any person other than such first spouse shall be illegal and void from its performance, unless:

. . . .

2) The first spouse had been absent for seven consecutive years at the time of the second marriage without the spouse present having news of the absentee being alive, or if the absentee, though he has been absent for less than seven years, is generally considered as dead and believed to be so by the spouse present at the time of contracting such subsequent marriage, or if the absentee is presumed dead according to articles 390 and 391.

Philippine Civil Code Art. 83. (The appellant included a paperback book, THE CIVIL CODE OF THE PHILIPPINES, 1993 REVISED EDITION, with his brief.) The Secretary has not ad-

dressed the Philippine presumption of death provision at all, arguing instead that section 108 applies. To be considered by a United States court, foreign law must be proved. *Cuba R.R. Co. v. Crosby,* 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912). The only statement of Philippine law we have before us is that provided by the appellant. However, even if we were to apply the asserted Philippine law with a California gloss—a point we do not decide—the appellant cannot prevail, for the evidence of record supports the factual conclusions of the Board, and those facts are disqualifying under that asserted law.

On appeal in this Court, the appellant argues, in essence, that his second marriage is not invalid because, under the Philippine Civil Code, when a spouse is absent for seven consecutive years without news of the spouse being alive, and it is believed by the spouse that the missing spouse is dead, a subsequent marriage is not void. In other words, according to him, the Philippine Civil Code provision does not require the abandoned spouse to conduct a diligent search or that the absence of the spouse be unexplained.

In *Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991), we held that the VA is not obliged to determine whether a claim for spousal benefits is well grounded until the veteran or the spouse seeking benefits first submits preponderating evidence to show that he or she is a claimant under the law. Here, the appellant did submit a copy of a marriage certificate certifying that he and Ninfa Palma were married in 1983. However, the facts are that the RO interviewed both Consolacion Fernandez and the appellant, considered their conflicting stories regarding the events in 1945 (each felt that the other was guilty of abandonment), and, after having reviewed all the evidence, found that "the preponderance of evidence indicates that it was the veteran who abandoned Consolacion, not the reverse." R. at 144. Thus, because Consolacion Fernandez was not the absentee, as a matter of law, the appellant could not have presumed that she was dead under either section 108 of the U.S. Code or the Philippine Civil Code.

### III. Conclusion

Because the VA has found that the appellant abandoned his spouse, as a matter of law he cannot have presumed Consolacion Fernandez was dead and his claim for benefits for Ninfa Palma was not well grounded. Accordingly, we AFFIRM the Board's decision.

KRAMER, Judge, dissenting:

While the majority focuses solely on refuting the argument of the pro se appellant, the real issue in this case, unreferenced by the majority, is whether the appellant's marriage to Ninfa Palma is valid under 38 U.S.C. § 103(c) and 38 C.F.R. § 3.1(j) (1993).

Title 38 U.S.C. § 103(c) provides:

In determining whether or not a person is or was the spouse of a veteran, their marriage shall be proven as valid for the purposes of all laws administered by the Secretary according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued.

The corresponding regulation, 38 C.F.R. § 3.1(j), states: "Marriage means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued."

As a prerequisite to applying the statute and regulation to the appellant, the BVA should have discussed the meaning of the phrase, "when the right to benefits accrued" and should have addressed whether the law of the place to be applied was that which was in effect *at the time of* the marriage or *at the time when* the right to benefits accrued, or the law of such place which is *presently in effect. See Sanders v. Brown,* 6 Vet.App. 17, 19 (1993); *see also Karnas v. Derwinski,* 1 Vet.App. 308, 311–13 (1991). After such discussion, the BVA should have applied the law to the facts of this case. I note that at least one possibly critical factual determination, whether the parties presently reside in the Philippines or in the United States, has not been made. *See* R. at 189 where the appellant stated, "I left Manila last August 2, 1992, in order to follow up my petition for natural-

ization.... [I] request that my monthly pension checks be forwarded to my current [Texas] address where I will reside indefinitely."

The BVA did address one possible consideration with respect to the present validity of the appellant's marriage, the validity of the appellant's March 1949 Nevada divorce decree from his first wife. R. at 7. In addressing the decree's validity, the BVA simply noted an opinion of the District Counsel. *Id.* However, the BVA did not incorporate this opinion into its own decision. Simply noting a District Counsel opinion is not sufficient. Pursuant to 38 U.S.C. § 7104(a), the BVA, itself, must "consider[ ] ... applicable provisions of law and regulation." Further, in rendering such decision, pursuant to 38 U.S.C. § 7104(c), it is only "bound ... by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department." An opinion rendered by a District Counsel is not included in subsection (c).

Even if the BVA had incorporated the District Counsel opinion, that opinion was deficient. Rather than discussing the provisions of §§ 103(c) and 3.1(j), referenced above, and then applying these provisions to the facts here, the opinion was limited to concluding that the Philippine law in effect in 1949, at the time of the Nevada divorce, did not recognize the validity of the divorce and then, ambiguously, concluded either that a 1950 change in Philippine law did not validate the 1949 decree or that it did not validate the 1983 marriage. R. at 184–85.

I would vacate the BVA decision on these grounds and remand accordingly.