Merlina B. DEDICATORIA, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–1069.

United States Court of Veterans Appeals.

Dec. 19, 1995.

Bruce Tyler Wick, Cleveland, OH, was on the brief, for appellant.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and A.M. Fent, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and MANKIN, Judges.

MANKIN, Judge:

The appellant, Merlina B. Dedicatoria, appeals the August 12, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied her claim for recognition as the veteran's surviving spouse for VA benefit purposes. Both the Secretary and the appellant filed briefs. The appeal is timely, and this Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the decision of the BVA.

## I.  FACTUAL BACKGROUND

The veteran, Teodulfo Dedicatoria, served on active duty in the United States Navy from November 16, 1945, to December 17, 1964. He died on May 9, 1990. The death certificate described the immediate cause of death as "probable heart failure"; however, emphysema was also listed as contributing significantly to his death. In February 1992, the VA regional office (VARO) found that the veteran's "service-connected pulmonary tuberculosis contributed substantially to his death"; therefore, the VARO concluded that "eligibility for benefits under 38 U.S.C. Chapter 35[was] established."

In June 1990, the appellant submitted an application for dependency and indemnity compensation (DIC). In January 1991, the VARO ordered a field examination to determine the marital status of the appellant and the veteran. The field examinations revealed

evidence that the appellant was legally married to Uldarico Paramo, and she was not legally separated at the time she entered into the ceremonial marriage with the veteran. Other evidence revealed that the veteran was married to Rizalina Fallorin until her death in January 1987, that the veteran fathered one child with the appellant on August 8, 1986, and that the veteran and the appellant were ceremonially married in May 1987.

In June 1991, the VARO concluded that the appellant cannot "be recognized as the veteran's surviving spouse for VA purposes." In July 1991, the appellant filed a Notice of Disagreement, and the VARO issued the Statement of the Case. In March 1992, the VARO issued a Supplemental Statement of the Case.

The BVA denied the appellant's claim for DIC benefits, and concluded that "[t]he requirements for recognition as the veteran's surviving spouse for VA benefit purposes have not been met." *Merlina B. Dedicatoria*, BVA 93–15536, at 3 (Aug. 12, 1993). The BVA's decision quoted the following passage from a treatise on domestic relations: "It is laid down as an elementary principle, both by statute and case law, that a person may not at any time have but a single spouse. A marriage is wholly null and void if contracted when either party already had a spouse living and undivorced." H.H. Clark Jr., LAW OF DOMESTIC RELATIONS, 64–65 (1988). The BVA also cited Article 83 of the Philippine Civil Code as additional authority for this proposition. *Dedicatoria*, BVA 93–15536, at 4.

In addition, the BVA recognized that under 38 U.S.C. § 103(a) and 38 C.F.R. § 3.52 an invalid marriage could be "deemed valid" if the appellant "was without knowledge of any legal impediment to [the] marriage." *Ibid.*

The BVA denied the appellant's claim because the record revealed that at the time she entered into the marriage agreement with the veteran she was already legally married to Uldarico Paramo. *Ibid.* The BVA also found that, in view of the appellant's false and inconsistent statements, there was "no merit or substance to her assertion that she believed there was no legal impedi-

ment to her marriage to the veteran." *Id.* at 5.

## II. ANALYSIS

▮▮▮ The determination of whether, under 38 U.S.C. § 103(a), a claimant is legally married to a veteran, as to qualify for DIC benefits, is a question of fact subject to the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). *See Badua v. Brown*, 5 Vet.App. 472, 473 (1993). Under this standard, the Court can overturn the BVA decision only when there is no "plausible basis in the record" for the decision. *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990).

In *Brillo v. Brown*, 7 Vet.App. 102, 105 (1994), this Court reaffirmed its holding in *Aguilar v. Derwinski*, 2 Vet.App. 21, 23 (1991), "that the VA is not obliged to determine whether a claim for spousal benefits is well grounded until the veteran or the spouse seeking benefits first submits preponderating evidence to show that he or she is a claimant under the law." *See also Sandoval v. Brown*, 7 Vet.App. 7, 9 (1994) (stating that "[b]efore applying for benefits, a veteran's spouse must supply proof of her or his marital status" in order to achieve claimant status). Accordingly, the appellant "has the burden to come forward with preponderating evidence of a valid marriage under the laws of the appropriate jurisdiction." *Aguilar*, 2 Vet.App. at 23; *see* 38 C.F.R. 3.205 (1994) (providing for a number of ways that a spouse can prove marital status).

▮▮▮ According to the applicable statute and regulation, the legal existence of a marriage for VA purposes is governed by "the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the rights to benefits accrued." 38 U.S.C. § 103(c); 38 C.F.R. § 3.1(j) (1994); *see also Badua*, 5 Vet.App. at 474. Here, the appellant and the veteran were allegedly married in the Philippines, and while the Court recognizes that, generally, "foreign law must be proved," *Brillo*, 7 Vet.App. at 105 (citing *Cuba R.R. Co. v. Crosby*, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912)), the Court will

take judicial notice of the relevant portion of the Philippine Civil Code because it has been cited by this Court in the past. *See Brillo*, 7 Vet.App. at 105; *see also Badua*, 5 Vet.App. at 474.

Article 83 of the Philippine Civil Code provides that:

> Any marriage subsequently contracted by any person during the lifetime of the first spouse of such person with any person other than such first spouse shall be illegal and void from its performance, unless:
>
> (1) the first marriage was annulled or dissolved; or (2) the first spouse had been absent for seven consecutive years at the time of the second marriage without the spouse present having news of the absentee being alive, or if the absentee, though he has been absent for less than seven years, is generally considered as dead and believed to be so by the spouse present at the time of contracting such subsequent marriage, or if the absentee is presumed dead.... The marriage so contracted shall be valid in any of the three cases until declared null and void by a competent court.

With the exception of one supporting citation, the BVA did not apply Philippine law in its decision. Rather, the BVA relied on a legal treatise for the general conclusion that the appellant's claim must be denied because "she was a party to a prior undissolved marriage." *Dedicatoria*, BVA 93–15536, at 4. Apparently, the BVA treated this legal treatise as evidence obtained after the issuance of the most recent Statement of the Case or Supplemental Statement of the Case, and pursuant to the requirements this Court enumerated in *Thurber v. Brown*, 5 Vet.App. 119 (1993), the BVA provided the appellant with a copy and notice of its intent to rely on the treatise for its decision. The Court notes that this was unnecessary because the legal treatise is not evidence. However, this issue does not affect the outcome of this appeal because the action taken by the BVA is not prejudicial to the appellant. *See* 38 U.S.C. § 7261(b); *Gabrielson v. Brown*, 7 Vet.App. 36, 41 (1994).

■ The BVA also adjudicated the appellant's claim under 38 U.S.C. § 103(a) and the corresponding regulation, 38 C.F.R. § 3.52 (1994). Section 103(a) of title 38, United States Code, allows the Secretary to declare a marriage, which is otherwise invalid, "deemed valid." Similarly, section 3.52 of title 38, Code of Federal Regulations, provides that "[w]here an attempted marriage of a claimant to the veteran was invalid by reason of legal impediment, the marriage will nevertheless be deemed valid if ... [t]he Claimant entered into the marriage without knowledge of the impediment...." The Court interprets this regulation to require that the determination of appellant's knowledge with respect to the legal impediment must be viewed in terms of what the appellant's state of mind was at the time that the invalid marriage was contracted.

Here, the appellant asserted in her VA Form 1–9 that she considered her first marriage to be null and void because her first husband had been absent for seven years and was presumed dead. The appellant also asserted that she believed that her first marriage was null and void when her first husband entered into a marriage with another person in 1982. Based on these conflicting statements, the BVA concluded "that inconsistencies in the record cast significant doubt on the appellant's belief and significantly reduce and diminish the credibility and probative value of the appellant's statements so as to render them virtually worthless." *Dedicatoria*, BVA 93–15536, at 4. The BVA also noted that it was "interesting that if the appellant believed her prior husband was deceased due to his absence for over seven years, that she would be aware of his remarriage in 1982." *Id.* at 5. In view of "the false statements sworn to by the appellant, [the BVA found] no merit or substance to [the appellant's] assertion that she believed there was no legal impediment to her marriage to the veteran." *Id.* at 5.

The Court notes that there is an apparent conflict between section 103(c) and section 108 of title 38, United States Code. Section 103(c) states that "the law of the place where the parties resided" governs the determination of whether a person claiming to be a spouse of the veteran has achieved claimant status. 38 U.S.C. § 103(c). Section 108,

445

however, states that "[n]o [s]tate [l]aw providing for presumption of death shall be applicable to claims for benefits under laws administered by the Secretary." 38 U.S.C. § 108(a).

In reconciling this conflict, the Court in *Badua* held that section 103(c) governed and Philippine law was applicable in that particular case "because the absence of [the appellant's] second wife was not 'unexplained' and there was no diligent search to ascertain her existence." *Badua,* 5 Vet.App. at 474 (citing 38 U.S.C. § 108). Here, the absence of the appellant's first husband was not unexplained. In fact, as the BVA noted, she was "aware of his remarriage in 1982." *Dedicatoria,* BVA 93–15536, at 5. Therefore, the Court holds that section 103(c) governs and Philippine law is applicable in this case.

The factual findings of the BVA with respect to the credibility of appellant's evidence establish that her ceremonial marriage to the veteran was void under Article 83 of the Philippine Civil Code. *See Brillo,* 7 Vet. App. at 105; *Aguilar,* 2 Vet.App. at 23. Although the appellant did submit a copy of a signed marriage contract as proof of her marriage to the veteran, the BVA found that she was still legally married to Uldarico Paramo and that the appellant knew that he was still alive. The appellant simply did not provide sufficient evidence that her marriage to the veteran was valid under Philippine law. Therefore, the appellant never met the threshold requirement of obtaining claimant status. *See Brillo,* 7 Vet.App. at 105; *Aguilar,* 2 Vet.App. at 23.

The appellant also did not provide sufficient evidence that her marriage to the veteran could be "deemed valid" under 38 C.F.R. § 3.52 and 38 U.S.C. § 103(a). Although the BVA did not explicitly state that when the appellant entered into the marriage with the veteran she had the requisite knowledge of an actual legal impediment to the marriage, it did provide acceptable reasons and bases, pursuant to 38 U.S.C. § 7104(d)(1), for the Court to infer such a conclusion. This is so because the BVA noted several falsities and inconsistencies in the appellant's evidence and assertions. The BVA essentially gave no credence to the

appellant's evidence and assertions that she deemed her marriage to Uldarico Paramo to be null and void at any time. The Court finds no reason to set aside these factual conclusions of the BVA.

Finally, the Court notes that while the BVA concluded that the appellant's claim was well grounded and "gratuitously treated [the] appellant as if she had the status of a claimant, it need not have accorded her the benefits and protections of title 38 as she never legitimately attained the status of a claimant." *Aguilar,* 2 Vet.App. at 23; *see also Sandoval* 7 Vet.App. at 9 (recognizing that "[o]nly a claimant is entitled to the Secretary's assistance in the development of the facts pertinent to the claim, the benefit of the doubt, and the determination whether the claim is well grounded").

## III. CONCLUSION

The Court holds that there is a plausible basis in the record for the BVA's conclusion that the appellant's marriage to Teodulfo Dedicatoria was invalid for the purpose of her being recognized as the veteran's surviving spouse for VA benefit purposes. Accordingly, the August 12, 1993, decision of the BVA is AFFIRMED.