# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-1860

SYLVIA A. VENTRIS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided August 31, 2021)

*Glenn R. Bergmann* and *J. Corey Creek*, both of Bethesda, Maryland, were on the brief for the appellant.

*Jennifer K. Hamel*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Richard A. Daley,* Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and TOTH, *Judges*.

BARTLEY, *Chief Judge*: Appellant Sylvia A. Ventris appeals through counsel a November 27, 2018, Board of Veterans' Appeals (Board) decision denying her recognition as the surviving spouse of deceased veteran James D. Adcock and consequently denying her entitlement to dependency and indemnity compensation (DIC), death pension, and accrued benefits. Record (R.) at 3-8. This appeal is timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to address the proper interpretation of the language "[o]n or after January 1, 1971," as used in 38 C.F.R. § 3.55(a)(2)(ii), a provision governing reinstatement of VA benefits eligibility when a deceased veteran's spouse remarries and is subsequently divorced. Because the Board incorrectly denied Ms. Ventris recognition as a surviving spouse and entitlement to DIC and accrued benefits, the Court will set aside those portions of the November 2018 Board decision and remand those matters for further development, if necessary, and readjudication consistent with this decision. The Court will affirm that portion of the Board decision that denied entitlement to death pension.

## I. FACTS

Veteran James D. Adcock served on active duty in the U.S. Air Force from June 1951 to June 1955. R. at 79-80. On May 23, 1956, he married appellant. R. at 114, 116. The veteran died on January 9, 1957, and the death certificate lists his marital status as "married." R. at 41.

In April 1958, Ms. Ventris remarried;[1] that marriage was dissolved by decree of divorce in July 1962. R. at 99, 117. In May 1970, Ms. Ventris remarried again; in October 1973, that marriage was dissolved by decree of divorce. R. at 119, 111-12.

In September 2010, Ms. Ventris filed an application for VA death benefits as the surviving spouse of the veteran, R. at 101-10, which a VA regional office (RO) denied that same month, R. at 93-94. As to the denial of the claim for accrued benefits, the RO noted that the veteran was not in receipt of any VA benefits at the time of his death. R. at 93. As to death benefits, the RO determined that Ms. Ventris could not be recognized as the veteran's surviving spouse, citing her remarriages following the veteran's death. *Id*. Ms. Ventris disagreed with this decision, R. at 90, and the RO continued its denial in a June 2012 Statement of the Case, R. at 55-77. Ms. Ventris timely perfected an appeal to the Board. R. at 53-54.

In the November 2018 decision on appeal, the Board denied entitlement to DIC, death pension, and accrued benefits, including recognition as the veteran's surviving spouse for VA purposes. The Board found that Ms. Ventris and Mr. Adcock were validly married to each other at the time of his death. R. at 7. However, the Board concluded that Ms. Ventris's April 1958 remarriage terminated her eligibility as the veteran's surviving spouse for DIC, accrued benefits, and death pension purposes, stating that "[b]efore January 1, 1971, the only exception permitting restoration of her eligibility as the surviving spouse . . . was if the remarriage was void, or annulled." R. at 7 (citing 38 C.F.R. § 3.55(a)(2)(ii) (2018)). The Board noted that Ms. Ventris did not argue that her May 1958 remarriage was void. *Id*. The Board acknowledged Ms. Ventris's ensuing divorce, as well as her second remarriage and divorce, but concluded that her July 1962 divorce was irrelevant because her eligibility for benefits as the veteran's surviving spouse following her first remarriage was never restored. R. at 7-8. This appeal followed.

---

[1] In the decision on appeal, the Board refers to Ms. Ventris's "May 1958 remarriage," R. at 7; as the July 1962 decree of divorce makes clear, this remarriage took place on April 10, 1958. *See* R. at 117.

## II. ANALYSIS

### A. Recognition as Surviving Spouse

#### 1. Remarriage of Surviving Spouse and Benefits Eligibility

As a general rule, a surviving spouse is a person (1) validly married to the veteran at the time of the veteran's death, (2) "who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse)," and (3) "who has not remarried or . . . lived with another person and held himself or herself out openly to the public to be the spouse of such other person." 38 U.S.C. § 101(3); *see* 38 C.F.R. § 3.50(b) (2021).

A surviving spouse's eligibility for benefits has evolved over time. Prior to 1970, remarriage of a surviving spouse was an absolute bar to benefits. *See* 38 U.S.C. § 101(3) (1970) (Defining "widow" for VA benefits purposes as a woman who, among other things, "has not remarried"). Congress subsequently made adjustments to the statutory scheme, effectuating different periods of benefits eligibility for surviving spouses. Under the present regime, remarriage of a surviving spouse generally bars the furnishing of VA benefits to such surviving spouse, but termination of that remarriage may reinstate eligibility for some benefits.[2] *See* 38 U.S.C. § 103(d)(2)(A) (providing that remarriage of the surviving spouse of a veteran "shall not bar the furnishing" of certain benefits to the surviving spouse if the remarriage has been terminated by death or divorce).

The current version of the regulation and the one at issue in Ms. Ventris's case, that the Board interpreted in the decision on appeal, states:

> On or after January 1, 1971, remarriage of a surviving spouse terminated prior to November 1, 1990, or terminated by legal proceedings commenced prior to November 1, 1990, by an individual who, but for the remarriage, would be considered the surviving spouse, shall not bar the furnishing of benefits to such surviving spouse provided that the marriage . . . [h]as been dissolved by a court with basic authority to render divorce decrees[.]

38 C.F.R. § 3.55(a)(2) (2021).

#### 2. The Board Decision and the Parties' Arguments

In its decision, the Board concluded that Ms. Ventris's April 1958 remarriage ended her eligibility for benefits as the veteran's surviving spouse because, although that remarriage was

---

[2] As relevant to Ms. Ventris's case, these benefits include DIC, as well as medical care for survivors and dependents of certain veterans, educational assistance, and housing loans. 38 U.S.C. § 103(d)(5).

terminated by divorce, "this [remarriage and divorce] occurred prior to January 1, 1971." R. at 7. The Board continued: "Before January 1, 1971, the only exception permitting restoration of [Ms. Ventris's] eligibility as the surviving spouse following remarriage . . . was if the remarriage was void or annulled." *Id*. Essentially the Board determined that January 1, 1971, relates to the date of the surviving spouse's remarriage. The Secretary argues likewise. Secretary's Brief (Br.) at 3-5. Under this reading, remarriage prior to January 1, 1971, would preclude benefits eligibility for a veteran's surviving spouse; remarriage on or after that date that terminated in divorce would qualify the surviving spouse for benefits, assuming all other criteria for benefits were met.

Ms. Ventris argues that January 1, 1971, marks the date from which VA has authority to grant benefits to surviving spouses whose remarriages terminated by the means referenced in (a)(2)(i) and (a)(2)(ii). Appellant's Br. at 6-9. Under this reading, the relevant date for benefits eligibility is the date of the surviving spouse's claim for benefits.

### 3. History and Application of the Regulation

We begin with the regulation's language, "the plain meaning of which is derived from its text and structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). If the plain meaning is evident from that investigation, then that meaning controls and "that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)). If not, the Court may look to other sources, including the history and purpose of the regulation, to discern its meaning. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *Bailey v. Wilkie*, 33 Vet.App. 188, 194-95 (2021). The interpretation of a regulation is a question of law that the Court reviews de novo. *Moody v. Wilkie*, 30 Vet.App. 329, 336 (2018) (per curiam). The current statute addressing remarriage of surviving spouses and benefits eligibility contains no temporal reference related to the date of remarriage: "The remarriage of the surviving spouse of a veteran *shall not bar the furnishing of benefits* specified in paragraph (5) [(including DIC benefits)] to such person as the surviving spouse of the veteran if the remarriage has been terminated by death or divorce." 38 U.S.C. § 103(d)(2)(A) (emphasis added). In contrast, VA's implementing regulation contains several temporal references. Relevant here, the regulation states that "on or after January 1, 1971, remarriage of a surviving spouse that is terminated prior to November 1, 1990," shall not bar the furnishing of benefits to such surviving spouse provided that the marriage has been dissolved by divorce. 38 C.F.R. § 3.55(a)(2).

4

Examining the regulation, as we will explain, it is clear that the dates mentioned, January 1, 1971, and November 1, 1990, correspond to the effective dates of statutory changes regarding benefits eligibility upon termination of marriage. As Congress modified the law governing benefits eligibility for surviving spouses, VA made requisite adjustments to its regulatory scheme.

For claims filed prior to January 1, 1971, remarriage of a surviving spouse of a deceased veteran was an absolute bar to benefits, unless the remarriage was void or annulled. 38 U.S.C. §103(d) (1964). The statute was amended to stipulate that remarriage of a veteran's surviving spouse would not bar entitlement to VA benefits if the remarriage ended in divorce, and Congress explicitly specified that this new provision would take effect January 1, 1971. Act of August 12, 1970, Pub. L. No. 91-376, §§ 4, 9, 84 Stat. 787 (1970) (codified as amended at 38 U.S.C. § 103(d)(2) (1971)). Congress also contemplated the case of a surviving spouse whose benefits eligibility had been cut off by a remarriage and the effect of the termination of the remarriage: "The effective date of an award of benefits . . . shall not be earlier than the date of receipt of application therefor, filed after termination of the particular relationship or conduct and after December 31, 1970." Pub. L. No. 91-376, § 5 (a-b). In the corresponding regulation, VA mirrored the language of the statute: "On or after January 1, 1971, remarriage of a widow shall not bar the furnishing of benefits to such widow if the marriage . . . has been dissolved by a court with basic authority to render divorce decrees." 38 C.F.R. § 3.55(A)(2) (Aug. 12, 1970). The temporal reference incorporated into this regulation unambiguously relates to the effective date of the statutory change, not to the date of remarriage.

In 1990, Congress eliminated the liberal statutory provision of 1971 by deleting section 103(d)(2). Omnibus Budget Reconciliation Act, Pub. L. No. 101-508, § 8004(a)(1)(B), 104 Stat. 1388-344 (1990) (codified as amended at 38 U.S.C. § 103 (1991)). As to the effective date of the 1990 change, Congress specifically noted that "[t]he amendments made by subsection (a) shall apply with respect to claims filed after October 31, 1990." Pub. L. No. 101-508, § 8004(b).

In response to the 1990 change in law, VA issued a more restrictive regulation: "With respect to claims filed prior to November 1, 1990, on and after January 1, 1971, remarriage of a surviving spouse shall not bar the furnishing of benefits to such surviving spouse if the marriage . . . has been dissolved by a court with basic authority to render divorce decrees." 38 C.F.R. 3.55(b)(2) (1990). A plain reading of this revised regulation indicates that both of the dates in the updated regulation relate to dates of claim. The first temporal reference, November 1,

1990, makes clear that the 1990 statutory change was prospective, to be applied to claims filed after the change in law. The second temporal reference, January 1, 1971, is a retained reference to the evolution of the statutory scheme. *See* 38 U.S.C. § 103(d)(2) (1971); *see also* 38 C.F.R. § 3.55(A)(2) (Aug. 12, 1970).

In 1991, in an attempt to clarify the more restrictive law, Congress explicitly indicated that the 1990 change would not apply "to any individual who on October 31, 1990, was a surviving spouse or child within the meaning of title 38." Savings Provision for Elimination of Benefits for Certain Remarried Spouses, Pub. L. No. 102-86, § 502, 105 Stat. 414, 424 (38 U.S.C. § 103) [hereinafter 1991 Savings Provision]. Essentially, Congress sought to ensure that the more restrictive eligibility rules enacted in 1990 would not harm a surviving spouse who had remarried, ended the remarriage through divorce, and had, prior to the restrictive change in law, had benefits eligibility reinstated.

In response, in 1992, VA again updated the regulatory language: "Provided that . . . the surviving spouse has not remarried after October 31, 1990, marital relationships terminated on or after January 1, 1971, but prior to November 1, 1990, shall not bar the furnishing of benefits to such surviving spouse." 38 C.F.R. 3.55(b)(3). VA explained that the reason for this regulatory change was to implement the 1991 Savings Provision shielding surviving spouses with reinstated benefits from the more restrictive 1990 law. *See Veterans Benefits Programs Improvement Act of 1991*, 57 Fed. Reg. 10,424, 10,425 (March 26, 1992) (final rule). The statutory language contained no reference to the date of a surviving spouse's termination of remarriage and VA provided no rationale for characterizing the 1991 law in this manner.

In October 1992, Congress made an additional clarification to the scope of the 1990 restrictive law change. They clarified that the 1990 restrictive law did not apply to a surviving spouse where legal proceedings to terminate a remarriage began before November 1, 1990, so long as the remarriage was actually terminated as a result of those legal proceedings. *See* Veterans' Benefits Act of 1992, Pub. L. No 102-568, § 103, 106 Stat. 4320, 4322 (Oct. 29, 1992) (38 U.S.C. § 103).

VA subsequently updated the regulation, removing the "marital relationships terminated on or after" language and settling on the language currently in use and applicable to Ms. Ventris: "On or after January 1, 1971, remarriage of a surviving spouse of a veteran terminated prior to November 1, 1990, or terminated by legal proceedings commenced prior to November 1, 1990,

shall not bar the furnishing of benefits to such surviving spouse provided that the marriage . . . has been dissolved by a court with basic authority to render divorce decrees." 38 C.F.R. § 3.55(a)(2)(ii).

In the law that took effect in January 1971, the relevant date for our purposes, January 1, 1971, clearly referred to the date of the statutory change and the prospective nature of the change in law. *See* Pub. L. No. 91-376, § 9. Clarifying the effective date of the award of benefits pursuant to this change, Congress explicitly stated that the effective date of such an award "shall not be earlier than the date of receipt of application therefore, filed after termination of the particular relationship or conduct and after December 31, 1970." Pub. L. No. 91-376 at § 5(b). Taken together, both section 9 and section 5b of Public Law 91-376, which refer to the effective date of the statutory change and the earliest possible effective date for benefits available under the law, clearly and unambiguously convey that the January 1, 1971, date refers to the date of the surviving spouse's claim for benefits. Where VA incorporated this date into the regulation, it was to implement the 1971 change in law, with its attendant date of claim requirement. 38 C.F.R. § 3.55(A)(2) (Aug. 12, 1970).

In 1990, when Congress instituted the more restrictive benefits regime undoing the liberalizing law, the language of the statute made clear that the change would apply to "claims filed after October 31, 1990," introducing a second relevant date for purposes of the statutory scheme. Pub. L. No. 101-508, § 8004(b). VA in turn incorporated that second date into its regulation. *See* 38 C.F.R. 3.55(b)(2) (1990) ("With respect to claims filed prior to November 1, 1990, on and after January 1, 1971 . . . "). By that point in the history, it is clear that both dates in the regulation could only refer to dates of claim. With the 1991 Savings Provision, Congress sought to clarify benefits eligibility of surviving spouses whose remarriages had terminated, and reframed the language around the second date, October 31, 1990. *See* Pub. L. No. 102-86, § 502. When VA updated its regulation to accord with the Savings Provision, the newly added "marital relationships terminated on or after January 1, 1971, but prior to November 1, 1990," language was inconsistent with the previous use of the January 1, 1971, date in earlier versions of the regulation, attached as it was to the date of claim. *See* 38 C.F.R. § 3.55(A)(2) (Aug. 12, 1970); 38 C.F.R. 3.55(b)(2) (1990). More important, that anomalous change to the regulation was short-lived. By 1992, after Congress once again clarified the scope of the 1990 restrictive change, VA's modification of the

regulation marked a clear return to the only plausible interpretation of the January 1, 1971, reference. *Compare* Pub. L. No 102-568, § 103 *with* 38 C.F.R. § 3.55(a)(2)(ii).

The Court agrees with Ms. Ventris that context indicates that the disputed language, "[o]n or after January 1, 1971," refers to the date of the surviving spouse's claim for VA benefits after the termination of a remarriage. Specifically, the statutory and regulatory history reveal that each of the dates referenced in the regulation reflects the date of a statutory change regarding benefits eligibility upon termination of remarriage and the effective date for the award of benefits subsequent to changes in benefits eligibility. As is evident from the 1970 statutory changes, those dates can only meaningfully be interpreted to correspond to the date of a claim for survivor benefits. *See Kisor*, 139 S. Ct. at 2415 (explaining that, "[i]f uncertainty does not exist," a regulation "then just means what it means—and the court must give it effect").

Indeed, we see no indication that Congress intended to tie benefits eligibility for surviving spouses to dates of remarriage or divorce. To the extent that Congress contemplated the effective date of changes to benefits eligibility in the relevant statutes, the statutory changes make clear that the surviving spouse's date of remarriage was never the pertinent consideration. *See* Pub. L. No. 101-508, § 8004(b) (amendment applies to claims filed after October 31, 1990); *see also* Pub. L. No. 105-178. § 8207(b) (amendment applies such that payments may only be made for any month after October 1998). Thus, the Court concludes that the Board erred in denying Ms. Ventris recognition as Mr. Adcock's surviving spouse for purposes of entitlement to certain VA death benefits.

### B. DIC

Having established that Ms. Ventris's April 1958 remarriage is not a bar to recognition as the surviving spouse of the veteran, we turn to her eligibility for DIC benefits. In October 1998, Congress reinstated eligibility for DIC benefits for the surviving spouse of a veteran whose remarriage terminated by, inter alia, divorce. Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, § 8207(a), 112 Stat. 107 (1998) (codified as amended at 38 U.S.C. § 1311(e)(1)). As to the effective date of this change, Congress provided that no payment due to that amendment may be made for any month before October 1998. Pub. L. No. 105-178. § 8207(b). Thus, Ms. Ventris, as a surviving spouse whose remarriage terminated in divorce and who filed a claim for DIC in September 2010, is not barred from eligibility for DIC benefits.

8

Because the Board erred as a matter of law in denying Ms. Ventris recognition as Mr. Adcock's surviving spouse for purposes of DIC entitlement due to her remarriage, the Court will set aside that portion of the Board decision and remand that matter for the Board to determine her entitlement to DIC benefits. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law").

On remand, Ms. Ventris is free to submit additional arguments and evidence, including arguments raised in her brief, and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutcherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## C. VA Death Pension

A review of relevant authorities does not compel the same result as to Ms. Ventris's claim for VA death pension benefits. Although Congress removed the remarriage bar for entitlement to DIC benefits, no similar statutory exception exists as to entitlement to death pension benefits. *See* 38 U.S.C. § 103(d)(2)(A) ("The remarriage of the surviving spouse shall not bar the furnishing of benefits specified in paragraph (5) to such person as the surviving spouse of the veteran is the remarriage has been terminated by death or divorce."); *see also* 38 U.S.C. § 103(d)(5) (listing DIC, as well as certain medical care benefits, educational assistance, and housing loans, but not non-service-connected pension, as exempt from the remarriage bar). VA's implementing regulation mirrors this restriction. *See* 38 C.F.R. § 3.55(a)(3) ("On or after October 1, 1998, remarriage of a surviving spouse terminated by death, divorce, or annulment, will not bar the furnishing of [DIC]."). To the extent that Congress exempted entitlement to DIC and other benefits from the remarriage bar, but did not likewise exempt entitlement to death pension benefits, "Congress's prerogative to balance opposing interests and its institutional competence to do so provide one of the principal reasons for deference to its policy determinations." *Salazar v. Buono*, 559 U.S. 700, 711 (2010); *see also Boyer v. West*, 210 F.3d 1351, 1356 (Fed. Cir. 2000) (Courts "can only

interpret the statutes that are enacted by the Congress . . . [and] are simply powerless to amend any statutory provision sua sponte.").

A Board determination as to whether an individual may be considered a surviving spouse is a factual question the Court reviews for clear error. *See Dedicatoria v. Brown*, 8 Vet.App. 441, 443 (1995). Given that death pension is not exempted from the remarriage restriction, the Court finds no clear error in the Board's determination that Ms. Ventris, by virtue of her remarriage, does not qualify as a surviving spouse for VA death pension purposes and will affirm that portion of the Board decision. *See Dedicatoria*, 8 Vet.App. at 443.

### D. Accrued Benefits

Certain survivors of a deceased VA benefits claimant may be entitled to accrued benefits, which are periodic monetary VA benefits to which the deceased claimant was entitled. *See* 38 U.S.C. § 5121(a); 38 C.F.R. § 3.1000 (2021). For a beneficiary to be entitled to accrued benefits, the deceased veteran or VA claimant must have had a claim pending or have been entitled to benefits at the time of death. *See Jones v. West*, 136 F.3d 1296, 1299 (Fed. Cir. 1998); *see also Zevalkink v. Brown*, 102 F.3d 1236, 1241 (Fed. Cir. 1996) ("[A]n accrued benefits claim is derivative of the veteran's claim for service connection, i.e., the claimant's entitlement is based on the veteran's entitlement."). In *Bailey v. O'Rourke*, this Court held that the plain language of the accrued benefits statute is clear that a spouse's eligibility for accrued benefits is to be determined as of the date the veteran died; remarriage does not affect a claim for accrued benefits. 30 Vet.App. 54, 59 (2018); *see* 38 U.S.C. § 5121(a)(2)(A).

The Court reviews for clear error Board factual determinations concerning entitlement to accrued benefits. 38 U.S.C. § 7261(a)(4); *see Hood v. Shinseki*, 23 Vet.App. 295, 299 (2009); *Zevalkink v. Brown*, 6 Vet.App. 483, 494 (1994), *aff'd,* 102 F.3d 1236. The Board must support its factual determinations with adequate reasons or bases that enable the claimant to understand the precise basis for that determination and facilitate review in this Court. 38 U.S.C. § 7104(d)(1); *Cantrell v. Shulkin*, 28 Vet.App. 382, 388 (2017); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

Ms. Ventris argues that because the Board stopped its analysis when it determined that she is not a surviving spouse, there was no attempt to obtains records that would allow the Board to make an informed decision concerning her entitlement to accrued benefits. She argues that, because VA did not obtain records related to Mr. Adcock, it could not have properly determined whether he was entitled to VA benefits at the time of his death or whether he had a pending claim

at death that could form the basis of accrued benefits award. The Secretary contends that any error in the Board's determination as to Ms. Ventris's eligibility for accrued benefits as a surviving spouse is harmless because Mr. Adcock did not have a pending VA claim or entitlement at death.[3] The Court agrees with Ms. Ventris that the Board failed to adequately address her entitlement to accrued benefits.

The Board denied entitlement to accrued benefits on the sole basis that Ms. Ventris's remarriage terminated her eligibility to be recognized as the veteran's surviving spouse, R. at 4, a finding that this Court has rejected today as to eligibility for benefits under 38 U.S.C. § 103(d)(5) and rejected in its prior decision in *Bailey* as to eligibility for accrued benefits generally, 30 Vet.App. at 59. The Board did not address whether Mr. Adcock had a pending claim for VA benefits, or entitlement, at his death, *see* R. at 5-7, and the record contains no pertinent findings that would support affirmance of this matter. The Secretary's assertion that Mr. Adcock had not applied for VA benefits prior to his death is not a permissible basis for the Court to affirm without proper development of the issue. In light of the Board's legal error with regard to Ms. Ventris's eligibility for accrued benefits, we remand for the Board to make requisite factual findings regarding Mr. Adcock's VA benefits claims or VA benefits entitlement at death.

Accordingly, the Court concludes that the Board erroneously denied Ms. Ventris entitlement to accrued benefits without undertaking proper consideration or development of that issue. On remand, the Board should adjudicate Ms. Ventris's entitlement to accrued benefits after proper development, including review of then-existing records that might verify whether Mr. Adcock had a claim pending at death or was otherwise entitled to VA benefits at death.

### III. CONCLUSION

Upon consideration of the foregoing, those portions of the November 27, 2018, Board decision denying Ms. Ventris recognition as a surviving spouse, DIC benefits, and accrued benefits

---

[3] The Court is unclear as to the basis for the Secretary's argument. The September 17, 2010, RO decision in this matter indicates that the VA adjudicator considered as evidence Ms. Ventris's application for benefits, her other submissions, and statements she made in connection with her application. R. at 93-94. The June 6, 2012, SOC similarly demonstrates that the adjudicator considered evidence submitted by Ms. Ventris. Thus, it is unclear whether VA obtained the necessary records to determine entitlement to accrued benefits.

are SET ASIDE, and those matters are REMANDED for further development, if necessary, and readjudication consistent with this decision. The remainder of the Board decision is AFFIRMED.